[No. 32399.   Department Two.   October 19, 1953.]

THERESA FAY, *Respondent,* v. ALLIED STORES CORPORATION, *Appellant.*[1]

¹Reported in 262 P. (2d) 189.

*Eggerman, Rosling & Williams* and *Joseph J. Lanza,* for appellant.

*Kahin, Carmody & Horswill* and *Burton C. Waldo,* for respondent.

FINLEY, J.—Plaintiff, Theresa Fay, recovered judgment in the superior court for King county against the defendant, The Bon Marche (a department store in Seattle). Defendant has appealed. The questions raised are whether the judgment for the plaintiff (based upon the jury's verdict) should be set aside either (a) because it is unsupported by the evidence, or (b) because it is contrary to law.

Plaintiff's injuries were sustained in a fall, when she slipped on the first of two stairways inside the Pine street entrance of The Bon Marche. As disclosed by photographic evidence, the particular entrance consists of three adjoining sets of double doors at the level of Pine street. The doors open upon a landing at street level. Two steps lead down from the entrance landing to another landing, from which a second stairway descends onto the main floor of the store. The stairway on which plaintiff slipped is the one leading from the street-level or entrance landing to the intermediate landing. It is over 16½ feet wide. There are no handrails on the sidewalls which flank the entrance of the stairway, nor at any intermediate point between the sidewalls.

On the day of the injury, there had been a heavy downpour of rain, and the streets were slushy from a snow that had preceded the rain. According to plaintiff's version of the facts, mud and water, tracked in from the street, had collected on the steps leading from the first landing. Plaintiff, sixty-two years of age, had shopped at The Bon Marche on many previous occasions and on this day had entered the store by the middle door of the Pine street entrance. By

her own statement on cross-examination, plaintiff did not look at the steps as she began to descend them. She proceeded down the steps leading from the first landing to the intermediate landing, slipped on the mud and water collected on the bottom step of the first landing, and fell. She sustained multiple fractures of the right ankle, which necessitated considerable care and attention. There is evidence in the record that she will continue to suffer from the effects of these injuries for some time, and that the injury is aggravated when she pursues her normal work as cook in the Waldo General Hospital, where she is required to stand on her feet for a good part of the day.

Plaintiff alleges her injuries were proximately caused by negligence on the part of defendant. The complaint urged four grounds of negligence. Three common-law grounds of negligence set forth in the complaint were withdrawn during the course of the trial, and it is necessary to consider only the remaining fourth ground of negligence asserted by plaintiff: that § 606 of the Seattle building code (ordinance No. 72200, effective November 1, 1942) is applicable in the instant case. This ordinance requires that stairways over eighty-eight inches wide must be equipped with intermediate handrails. As previously stated, the stairway on which plaintiff was injured had no such intermediate handrail and was not equipped with handrails at the sidewalls.

Appellant urges two assignments of error: that the court erred (1) in not granting its motion to dismiss, or, in the alternative, for a directed verdict at the close of the entire case; and (2) in denying its motion for judgment notwithstanding the verdict and in entering judgment on the verdict in plaintiff's favor.

Appellant argues at length that the ordinance does not apply retrospectively to buildings such as The Bon Marche, which were constructed prior to its passage. This question of retrospective application of the ordinance is squarely presented (a) by the trial court's denial of appellant's motion to dismiss for insufficiency of the evidence or, alternatively, for a directed verdict, and (b) by appellant's assignments of error respecting the denial of the motions.

■ Appellant cites several of our decisions respecting the rule of interpretation that statutes, generally, will be given prospective effect. However, exceptions are made where retroactivity is expressed or clearly implied. *Heilig v. Puyallup City Council*, 7 Wash. 29, 34 Pac. 164. The question necessarily presented to us for decision is whether the ordinance contains a clear indication that it is to apply to buildings constructed prior to its enactment.

Section 606 of the building code relied upon by respondent is found in Part VI, entitled "Means of Egress." It provides, in part, as follows:

"*All stairways*, except monumental entrances with rise and run approved as to safety by the Superintendent of Buildings, and except as otherwise herein provided, shall have walls or well-secured balustrades or guards on each side, and handrails shall be placed on both sides of *all stairways* over three (3) feet wide. *All such stairways* eighty-eight (88) inches or more in width shall be provided with one (1) or more continuous intermediate handrails substantially supported, and the number and position of intermediate handrails shall be such that there are not more than sixty-six (66) inches between adjacent handrails. The approach newals of intermediate handrails shall be at least six (6) feet high. Handrails shall be placed not less than thirty (30) inches nor more than thirty-six (36) inches above the nosings of the treads. Balustrades around stairway balconies, vestibules, and well holes not adjoining walls shall be not less than three feet six inches (3'6") in height." (Italics ours.)

Section 601, the first section of Part VI of the code, is entitled "General Egress Requirements." The first paragraph of this section provides:

"Good, safe and sufficient means of egress shall be provided for *all buildings* in case of fire or panic, and from each and every floor or subdivision thereof. In addition to the means of egress hereinafter required, every building or part thereof shall be provided with such additional means of egress as are necessary to assure safe escape in case of fire or panic." (Italics ours.)

This latter section is set out, not to indicate the standard of care required of appellant with reference to the main-

tenance of handrails, but rather as a base of reference, clarifying the scope of § 606, and that it may be considered *in pari materia* with § 606. Thus, it will be seen that § 606 employs the language "all stairways," and § 601 employs the words "all buildings." Taken together, the words embrace or mean *all stairways of all buildings*. If this is not sufficiently clear from the above two sections, reference may be made to § 102, which defines the scope of the entire ordinance as follows:

"The Building Code shall apply to . . . alteration, repair, . . . *maintenance, use, occupancy, . . . of all buildings, . . . :* In interpreting and applying the provisions of this Code, *such provisions shall in every instance be held to be the minimum requirements adopted for the promotion of the public health, safety, comfort or welfare. It . . . shall be binding upon all . . . persons having charge of the . . . alteration, repair, . . . maintenance, use, occupancy, . . . of the structures . . . to which this Code applies.*" (Italics ours.)

For the purpose of finding the intent of the city council, the important words of the ordinance are: *"all buildings,"* as found in §§ 102 and 601, and *"all stairways,"* as found in § 606 (relating to the *structures* which are within the scope of the code), and the words, "It . . . *shall be binding upon all . . . persons* having charge of the . . . maintenance, use, occupancy . . . of the structures . . .*" (Italics ours.)

We think the intent of the city council is clear and that § 606 applies in the instant case, and imposed a duty upon The Bon Marche as to the installation and maintenance of intermediate handrails in connection with the stairway. This opinion is impelled not only by the broad, all inclusive language employed, *i.e.,* "all stairways" and "all buildings," but from the stated object of the code and the guide for its construction that its "provisions *shall in every instance be held to be the minimum requirements adopted for the promotion of the public health, safety, comfort or welfare.*"

Our view that § 606 applies in the case at bar is also supported by the history of judicial construction of the Seattle building code. In *Seattle v. Hinckley,* 40 Wash. 468, 82 Pac.

747, this court considered a significantly comparable problem. Therein, a criminal action was commenced in 1905 against an office building owner for failure to comply with a provision of the Seattle building code which prescribed a certain type of fire escape. This section of the code had been enacted in 1901. The defense asserted that the defendant had complied with the existing building code when he constructed his fire escape in 1898, and urged that the new provision had no retrospective operation. In *Hinckley*, the court said:

"It may be conceded that the fundamental rule of construction of statutes is that they shall not be construed to be retrospective unless the retrospective intention is expressed, or can be plainly gathered from the provisions of the act. But it seems to us that the language of this ordinance is plain and unequivocal. When it is said that all hotels, office buildings, factories, tenements, and lodging houses more than three stories in height, shall have a certain described fire escape, it seems to us it was the plain intention of the city council that *all buildings described* should have such appurtenances, and that, if it had been the intention to except any buildings from its provisions, such exception would have been expressed. *The language is as broad and comprehensive as could well have been used.* In reason, too, it would seem that, if the city council, from observation or investigation, had determined that a certain character of fire escape was necessary for the preservation of people inhabiting certain classes of houses, it would be as important in the interest of the safety of the inhabitants of such houses to apply the rule to houses already built as to those thereafter built. There can be no doubt as to the constitutionality of this act under this construction." (Italics ours.)

The holding and the reasoning of the *Hinckley* case is squarely in point and applicable to the instant case.

In *Coffin v. Blackwell*, 116 Wash. 281, 199 Pac. 239, the action was to enjoin city officials from closing a hotel because of the failure of its owners to comply with the existing ordinance regarding safety devices in elevators. The hotel had been constructed in 1907 and had met the requirements of the city building code at that time. The court concluded that the new ordinance, with which the owner re-

fused to comply, had no retrospective application, but based its decision on § 103 of the then existing code, which provided:

" 'Nothing in the building code shall be construed as requiring that buildings heretofore constructed and equipped must be reconstructed, rearranged, altered or otherwise equipped unless it be by ordinance specifically so provided.' "

Section 103 was amended slightly about the time of the trial, but the change was not important for our purposes. This court, construing § 103 and § 9 of the fire hazard ordinance then in effect, said:

"Buildings in such condition [not imminently hazardous] are to be regarded as protected from mere executive interference by the building code, under § 103, and § 103 as amended, and § 9 of the fire hazard ordinance, 'unless [as provided in those sections] such alterations or installation are manifestly necessary for the safeguarding of life and property, or are specifically required by ordinance subsequently passed by the city council.' As heretofore remarked, 'manifestly necessary' means an immediate and unmistakable necessity."

Our review of the somewhat limited judicial history of the Seattle building code indicates to us that, where the language of the ordinance prescribing standards of *safety* as to construction or use, or occupancy, is universal, *e.g.*, "all office buildings," "every building," or "all fire escapes," it is given retrospective application to include prior constructed buildings unless, as in the *Coffin* case, the code specifically excepts such construction.

■ There was no error in permitting the case to go to the jury on the theory of negligence based on appellant's failure to erect handrails, as prescribed by § 606.

Appellant further contends that, even if the ordinance is applicable so as to require the existence or maintenance of intermediate handrails in this case, respondent cannot recover, because there is no substantial evidence in the record from which the jury could have found that failure to provide the intermediate handrail proximately caused the respondent's injuries.

Appellant's analysis of the evidence bearing on the circumstances surrounding the injury emphasizes that respondent was descending the steps at the center of the stairway when she was injured; that she slipped on the last or bottom step of the stairway leading to the intermediate landing; that her fall was sudden, and that her foot twisted out from under her when she fell. On the basis of this interpretation of the evidence, it is urged by appellant that, given the width of the stairway (198½ inches), and assuming intermediate handrails had been placed as required by the ordinance, respondent (descending the central portion of the stairway) would not have been near enough to one of the hypothetical intermediate handrails to have been assisted by it. Appellant emphasizes that a handrail, if existent, would not have aided respondent because the fall occurred at a spot away from where the handrail would have ended, and out of reach of it. Lastly, appellant suggests that respondent might have fractured her ankle, irrespective of the existence or nonexistence of a handrail.

■ The appellant's arguments are ingenious. However, after reading the record in the case and considering these arguments, we cannot say that the jury could not have found from the evidence that the failure to provide a handrail was a proximate cause of respondent's injury. To our minds, it can be argued, with an equal show of reason, from the evidence, that the failure to provide the handrail caused the injury.

■ In this respect, there was more than a scintilla of evidence supporting respondent's position on the question of causation, and, since the jury has made its findings on substantial but conflicting evidence and under proper instructions (considering appellant's failure properly to assign error to the giving of instruction No. 7, which makes it the law of the case), the jury's determination is final. It makes no difference that, as a matter of original determination, we might have decided otherwise had the issues of fact been submitted to us initially. *Rettinger v. Bresnahan,* 42 Wn. (2d) 631, 257 P. (2d) 633.

The final contention of appellant is that respondent's own testimony shows she was contributorily negligent by her failure to perceive the condition of the steps before she proceeded down them. We have already decided in numerous cases that the effect of one's failure to perceive obstacles in his path or to observe the condition of an area over which he passes is a question for the jury, to be considered in the light of all the facts and circumstances of the particular case. Furthermore, we have noted that one need not at all times walk about with his gaze fixed before him on the floor or the ground but, in appropriate cases, can give some attention to the circumstances surrounding him. We need note here only that we think the matter of respondent's alleged contributory negligence was one properly left to the jury. *Hines v. Neumer*, 42 Wn. (2d) 116, 253 P. (2d) 945.

The judgment of the trial court is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.

[1]Reported in 262 P. (2d) 184.