[No. 34982. Department Two. February 11, 1960.]

BYRON M. SORENSEN, *Respondent*, v. WESTERN HOTELS, INC., *Defendant*, LEOPOLD HOTEL COMPANY, *Appellant*.[1]

[1]Reported in 349 P. (2d) 232.

*Hullin, Ehrlichman, Carroll & Roberts*, for appellant.

*Henry W. Parrott* and *McCutcheon, Soderland & Wells*, for respondent.

HILL, J.—The determinative issue here is whether a building code was retroactive, so as to make conditions in existing buildings unlawful which had theretofore been lawful.

The plaintiff, Byron M. Sorensen who had been a guest in the Leopold hotel at Bellingham for about six weeks, slipped while descending a ramp which connected an alley entrance to the hotel with the lobby. He brought an action against the Leopold Hotel Company. A jury awarded him substantial damages, and a judgment was entered on the verdict.

From that judgment the defendant, which we will hereafter refer to as the hotel, appeals and asks for a dismissal

of the plaintiff's case; or, in the alternative, for a new trial. The issues raised are: (1) whether there was sufficient evidence of negligence to take the case to the jury; a negative answer would warrant a dismissal; and (2) whether the court erred in its instructions that a violation of the 1953 ordinance, adopting a uniform building code, was negligence in and of itself; an affirmative answer would require a new trial.

■ The plaintiff's allegation, relative to the negligence, was that the slope of the ramp on which he slipped and fell

". . . exceeded one in eight. The ramp was more than eighty-eight (88″) inches in width; the ramp was not provided with any handrails at all; the slope of the ramp exceeded one in ten. The surface of the ramp was not roughened or of non-slip material; the ramp was surfaced with rubber matting with the grooving in the rubber mat running lengthwise so as to provide a slippery footing. The ramp was situated immediately inside of the rear exit door; people entering the hotel through that rear door stepped immediately from the outside on to that rubber matting; whenever it was raining the water in the alley and on the parking lot was tracked on to the rubber matting, increasing its slipperiness."

The evidence established that it had been raining hard on the day on which the plaintiff slipped and fell. There was evidence to sustain all of these allegations.

There was evidence, on the other hand, that similar rubber matting was generally used, and that it was not considered unsafe or dangerous; that more than a quarter of a million people had used the ramp in the preceding twenty-five years without incident or injury, at least so far as the management of the hotel knew.

It is not for us to weigh the evidence and to determine what was or was not negligence. We cannot agree with the hotel, that there was no evidence of negligence; and, consequently, we cannot hold that it was entitled to a judgment n.o.v.

■ Nor can we agree with the contention that the hotel's duty was that of a landlord to a tenant, and, hence, its responsibility was for hidden defects only. We are not

here concerned with any distinction between a month-to-month tenancy, such as we found to exist in *Bidlake v. Youell, Inc.* (1957), 51 Wn. (2d) 59, 315 P. (2d) 644, and *McCormick v. Milner Hotels, Inc.* (1958), 53 Wn. (2d) 207, 332 P. (2d) 239, and an innkeeper-guest relationship. It is not material whether the defendant was a landlord or an innkeeper, if the portion of the premises on which the plaintiff was injured was under the control of the defendant.

In a ramp case, *Gilbert v. Bluhm* (1956) (Mo.), 291 S. W. (2d) 125, 127, 58 A. L. R. (2d) 1164, the Missouri court held that the hotel owed a guest "a duty to exercise ordinary care to maintain the ramp in a reasonably safe condition for the use for which it was intended."

In *McGinnis v. Keylon* (1925), 135 Wash. 588, 238 Pac. 631, an apartment-house case, we said (p. 592),

". . . All of the cases, however, lay down the rule that it is the duty of the landlord to keep such ways [passageways] reasonably safe for use by the tenants, . . ."

There can be no question but that the duty of the hotel, in this case, was to exercise reasonable care to maintain the ramp in a reasonably safe condition for the use for which it was intended. This brings us to what we, at the outset, designated as the determinative issue in the case: whether the building code adopted by the city of Bellingham in 1953, applied to the defendant's hotel, built in 1913, and to which a new addition had been built in 1929.

It is conceded that the hotel conformed to the building code when it was built and when it was remodeled. The code adopted in 1953, relating to ramps, provided among other things:

(a) The slope of a ramp shall not exceed one in eight.

(b) A ramp with a slope exceeding one in ten shall have handrails as required for stairways. (Stairways were required to have handrails on each side, and every stairway more than eighty-eight (88") inches in width was required to have intermediate handrails dividing the stairway into portions not more than sixty-six (66") inches in width.)

(c) The surface of ramps shall be roughened, or shall be of non-slip material.

These provisions of the building code give significance to the allegations of negligence that "The slope of the ramp exceeded one in eight," that "the slope of the ramp exceeded one in ten," that "the ramp was more than eighty-eight (88″) inches in width," that "the ramp was not provided with any handrails at all," and that "The surface of the ramp was not roughened or of non-slip material."

The trial court concluded that when the plaintiff slipped and fell in 1954, these provisions of the building code, adopted in 1953, were applicable to the hotel built, as we have seen, in 1913, and remodeled in 1929.

The plaintiff and the trial court considered that *Fay v. Allied Stores Corp.* (1953), 43 Wn. (2d) 512, 262 P. (2d) 189, was conclusive on the issue presented. In that case we affirmed a judgment for the plaintiff who had sustained a fall in a department store on a stairway which had no handrails. At the time of its construction in 1928, it conformed with the building code of the city of Seattle; subsequently, in 1942, the city adopted a new building code which required all stairways over three feet in width to have handrails on both sides; and all stairways over eighty-eight (88″) inches or more in width were required to have intermediate handrails, so spaced that there would be not more than sixty-six (66″) inches between handrails.

We there recognized the rule that legislative acts will generally be given prospective, and not retroactive, effect; however, we applied the exception: that a legislative act will be given retroactive effect when that intention is expressed or clearly implied.

It will be helpful, in a determination of whether the *Fay* case is controlling here, to study in parallel columns the provisions of the Seattle building code, which we found to establish a retroactive intent, with the comparable language in the Bellingham building code.

Section 102 in the Seattle ordinance, and §§ 102 and 103 in the Bellingham ordinance state the scope of the respective building codes as follows.

SEATTLE, § 102

"The Building Code shall apply to . . . alteration, repair, . . . *maintenance, use, occupancy, . . . of all buildings*, . . . In interpreting and applying the provisions of this Code, *such provisions shall in every instance be held to be the minimum requirements adopted for the promotion of the public health, safety, comfort or welfare. It . . . shall be binding upon all . . . persons having charge of the alteration, repair, . . . maintenance, use, occupancy, . . . of the structures . . . to which this Code applies*." (Taken from opinion in *Fay v. Allied Stores Corp., supra*; italics being supplied by the court.)

BELLINGHAM, § 102

"The purpose of this Code is to provide minimum standards to safeguard life and limb, health, property, and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures within the city and certain equipment specifically regulated herein.

"Wherever in this Code reference is made to the Appendix, the provisions in the Appendix shall not apply unless specifically adopted."

§ 103

"*New buildings and structures hereafter erected in the city*, and buildings and structures moved into or within the city shall conform to the requirements of this Code.

"Additions, alterations, repairs and changes of use or occupancy in all buildings and structures shall comply with the provisions for new buildings and structures except as otherwise provided in Sections 104, 306, and 502 of this Code.

". . ."

(Italics ours.)

The words "all buildings" in the Seattle code gave the basis for the conclusion of the court in the *Fay* case, *i.e.*, that the ordinance had a retroactive effect and was intended to be all inclusive. In § 103 of the Bellingham code the words "New buildings and structures hereafter erected in the city," indicate a prospective application only, and clearly negate any intent to make the code retroactive, as does the next paragraph with its specific provision that the code shall apply to "Additions, alterations, repairs and changes of use or occupancy in all buildings and structures." (Section 103 of the Bellingham ordinance is verbatim of § 103 of the Pasadena, California building code, which was held

not retroactive in its application.) *Stanford v. Bailey, Inc.* (1955), 132 Cal. App. (2d) 725, 282 P. (2d) 992, 996. This was also an injury-on-a-ramp case.

Another significant comparison is in the reference to the provision relative to the application of the building code to existing buildings.

SEATTLE, § 118

"All buildings and other structures and every part thereof shall be kept and maintained in a safe, sound and sanitary condition, and, except as otherwise provided, the requirements of this Code shall be considered the standard of safety, provided that a structure built under authority of and in accordance with former building ordinances shall not be required to have structural alterations or additions made thereto, except where the strength of the structure has so deteriorated as to make it unsafe." (No mention is made of this section in *Fay v. Allied Stores Corp., supra.*)

BELLINGHAM, § 104

"(a) General. Buildings or structures to which additions, alterations, or repairs are made shall comply with all the requirements for new buildings or structures except as specifically provided in this Section.

". . .

"(b) Additions, Alterations and Repairs: More Than 50 Per Cent. When additions, alterations, or repairs within any 12-month period exceed 50 per cent of the value of an existing building or structure, such building or structure shall be made to conform to the requirements for new buildings or structures.

" (c) Additions, Alterations, and Repairs: 25 to 50 Per Cent. Additions, alterations, and repairs exceeding 25 per cent but not exceeding 50 per cent of the value of an existing building or structure and complying with the requirements for new buildings or structures may be made to such building or structure within any 12-month period without making the entire building or structure comply. The new construction shall conform to the requirements of this Code for a new building of like area, height, and occupancy. Such building or structure, including new additions, shall not exceed the areas and heights specified in this Code.

"(d) Additions, Alterations and Repairs: 25 Per Cent or Less.

Structural additions, alterations, and repairs to any portion of an existing building or structure, within any 12-month period, not exceeding 25 per cent of the value of the building or structure shall comply with all of the requirements for new buildings or structures, except that minor structural additions, alterations, or repairs, when approved by the Building Official, may be made with the same material of which the building or structure is constructed. Such building or structure, including new additions, shall not exceed the areas and heights specified in this Code.

"(e) . . .

"(f) . . .

"(g) Existing Occupancy. Buildings in existence at the time of the passage of this Code, may have their existing use or occupancy continued, if such use or occupancy was legal at the time of the passage of this Code, provided such continued use is not dangerous to life.

". . ."

We cannot read these very explicit provisions in the Bellingham ordinance and not reach the conclusion that the Bellingham building code was not intended to apply to existing buildings or structures, except as additions, alterations or repairs were made thereto, or as otherwise specifically indicated. Section 104 (a) of the Bellingham building code is identical with § 104 (a) of the Pasadena building code. As heretofore pointed out, that building code has been held not to be retroactive in its application. *Stanford v. Bailey, Inc., supra.*

We turn to the sections relating to ramps and handrails in the two building codes:

| SEATTLE, § 606 | BELLINGHAM, § 3305 |
|---|---|
| "All stairways, except monumental entrances with rise and | "(g) Handrails. Stairways shall have handrails on each side, and |

run approved as to safety by the Superintendent of Buildings, and except as otherwise herein provided, shall have walls or well-secured balustrades or guards on each side, and handrails shall be placed on both sides of all stairways over three (3) feet wide. All such stairways eighty-eight (88) inches or more in width shall be provided with one (1) or more continuous intermediate handrails substantially supported, and the number and position of intermediate handrails shall be such that there are not more than sixty-six (66) inches between adjacent handrails. The approach newels of intermediate handrails shall be at least six (6) feet high. Handrails shall be placed not less than thirty (30) inches nor more than thirty-six (36) inches above the nosings of the treads. Balustrades around stairway balconies, vestibules, and well holes not adjoining walls shall be not less than three feet six inches (3′6″) in height."

### § 617

"Wherever stairways are required in this Code, ramps with a slope not greater than one (1) rise in six (6) horizontal may be substituted.

"Ramps shall comply with all applicable requirements for stairways; provided, that where a ramp has a slope of one (1) rise in eight (8) horizontal or greater, handrails shall be required on both sides, but no intermediate handrails shall be required.

"Ramps shall be surfaced with approved non-slip material."

every stairway more than eighty-eight inches (88″) in width shall have intermediate handrails dividing the stairway into portions not more than sixty-six inches (66″) in width.

"Handrails shall be placed not less than thirty inches (30″) nor more than thirty-four inches (34″) above the nosing of treads, and ends of handrails shall be returned to the wall."

### § 3306

"(a) General. A ramp conforming to the requirements of this Section may be used as an exit.

"(b) Width. The width of ramps shall be as required for corridors.

"(c) Slope. The slope of a ramp shall not exceed one in eight.

"(d) Handrails. A ramp with slope exceeding one in ten shall have handrails as required for stairways.

"(e) Construction. Ramps shall be constructed as required for stairways.

"(f) Surface. The surface of ramps shall be roughened or shall be of non-slip material."

These, we think, add little or nothing to our consideration of the issue as to whether the Bellingham ordinance was retroactive or prospective in its application; except, it is to

be noted, that this court in the *Fay* case italicized *"all stairways"* in § 606, relating to handrails, in its quotation therefrom on page 516 of 43 Wn. (2d), as emphasizing its position that the Seattle ordinance applied to *all buildings.*

The plaintiff argues that there is a distinction between provisions which have to do with minimum standards for safety, and provisions which have to do with structural construction. Thus provisions which have to do with the gradient of a ramp might be structural and prospective, and those having to do with a handrail could have to do with safety and be retroactive. There is nothing in the Bellingham building code which supports such a construction, but the uniform building code (adopted by Bellingham) makes it abundantly clear that such was not the idea of those who drafted that code.

By ordinance No. 6851, Bellingham adopted the "Uniform Building Code, 1952 Edition, together with amendments thereto, adopted to this date, and copyrighted by the Pacific Coast Building Officials' Conference," except as specifically modified and changed.

There is an appendix to the printed and copyrighted code which contains suggested sections "which may not be desired in all cities," and the code, as adopted by the city of Bellingham, specifically provided that the "provisions in the Appendix shall not apply unless specifically adopted."

A section in the appendix, not adopted, is most significant, and we quote it:

"EXISTING BUILDINGS

"Sec. 1309. (a) Purpose. The purpose of this Section is to provide a reasonable degree of safety to persons living and sleeping in apartment houses and hotels through providing for alterations to such existing buildings as do not conform with the minimum safety requirements of this Code.

"(b) Scope. The provisions of this Section shall apply exclusively to existing non-conforming Group H occupancies more than two stories in height.

"(c) Effective Date. Eighteen months after the effective date of this Section, every building falling within its scope shall be vacated until made to conform to the requirements of this Section.

"(d) Number of Exits. . . .

"(e) Stair Construction. All stairs shall have a minimum run of nine inches (9″) and a maximum rise of eight inches (8″) and a minimum width exclusive of handrails of thirty inches (30″). Every stairway shall have at least one handrail. A landing having a minimum horizontal dimension of thirty inches (30″) shall be provided at each point of access to the stairway.

"(f) Interior Stairways . . .

"(g)ⁱ Exterior Stairways . . .

"(h) Fire Escapes . . .

"(i) Doors . . .

"(j) Exit Signs . . .

"(k) Enclosure of Vertical Openings . . .

"(l) Separation of Occupancies . . .

"(m) Alternates . . ."

The only reason for the adoption of this section is, as indicated, that there are existing hotels and apartment houses which do not conform with the minimum safety requirements of the code. Obviously if the safety requirements of the building code were intended to be retroactive, there would be no necessity for § 1309. The city of Bellingham did not adopt this section, and it is clear that it was aware of the necessity of specifically adopting any portions of the appendix it desired to have in its building code, because it did make § 2312 (also included in the appendix) applicable to "All buildings in the City of Bellingham hereafter constructed." (This section had to do with lateral bracing because of earthquake possibilities.)

As heretofore indicated, the general rule is that a statute (or ordinance) will be presumed to operate prospectively only, and that it will not be held to apply retroactively in the absence of language clearly indicating such legislative intent. *Bodine v. Department of Labor & Industries* (1948), 29 Wn. (2d) 879, 190 P. (2d) 89; *Lynch v. Department of Labor & Industries* (1944), 19 Wn. (2d) 802, 145 P. (2d) 265; *Great Northern R. Co. v. Cohn* (1940), 3 Wn. (2d) 672, 101 P. (2d) 985.

In *Bodine v. Department of Labor & Industries, supra,* it was said (p. 889),

"We are committed to the rule that statutes will be con-

strued to operate prospectively unless an intent to the contrary has been manifested by the most clear and unequivocal expression."

We find no "clear and unequivocal expression" indicating an intention to make the Bellingham building code retroactive in its application. The clear and unequivocal language seems to point to its prospective application only. It is manifestly distinguishable from the Seattle ordinance which we had before us in *Fay v. Allied Stores Corp., supra.*

It follows that the trial court erred when it admitted exhibit No. 1 (the 1953 Bellingham city ordinance No. 6851, adopting the "Uniform Building Code, 1952 Edition," except as therein modified), and exhibit No. 2 (the Uniform Building Code, 1952 edition), see *Stanford v. Bailey, Inc., supra*; and that it erred in giving instruction No. 6, which told the jury that the ordinance was applicable and that any violation of it was "negligence in and of itself"; and that it erred in giving instruction No. 7, which told the jury that the ramp in question, which had no handrails, constituted a violation of the ordinance, and that a violation of an ordinance is "negligence in and of itself."

These errors require the granting of a new trial, unless, as the plaintiff contends, the defendant waived these errors by itself requesting instruction No. 8, and to which it took no exception. That instruction is as follows:

"In this case the plaintiff must prove not only that the defendant was negligent in the maintenance of the ramp in question but must further prove that such negligence was the proximate cause of his injury. You are instructed that the ramp was maintained in violation of the Ordinance passed by the City of Bellingham in February of 1953. However, in order to find that the defendant was guilty of negligence which was a proximate cause of plaintiff's injury, you must find that plaintiff's fall would not have occurred had the ramp been maintained in accordance with the City Ordinance. The burden is on plaintiff to prove proximate cause.

"If you should find under the circumstances and conditions which existed at the time of this accident that what happened was an accident which would have occurred on this ramp even had the ramp complied with the provisions

of the City Ordinance then, the defendant's violation of such ordinance would not be a proximate cause of plaintiff's injury. In this event your verdict must be in favor of the defendant.

"On the other hand, if you find that the defendant's negligence was a proximate cause of the injury and, if you further find that the plaintiff used reasonable care under the conditions which existed, then your verdict should be in favor of the plaintiff."

The plaintiff vigorously and plausibly argues that having requested and failed to except to an instruction which says, "You are instructed that the ramp was maintained in violation of the Ordinance passed by the City of Bellingham," that instruction became the law of the case. See *Schneider v. Noel* (1945), 23 Wn. (2d) 388, 160 P. (2d) 1002.

■ We have held that an adequate exception to one of two or more instructions subject to the same error is sufficient to challenge the consideration of the trial court, which is the purpose of the exception, and to bring the question here for review. *Crutcher v. Scott Publishing Co.* (1953), 42 Wn. (2d) 89, 104, 253 P. (2d) 925; *Franks v. Department of Labor & Industries* (1950), 35 Wn. (2d) 763, 770, 215 P. (2d) 416. The added element in this case is that appellant proposed the quoted instruction.

■ The purpose of the rule requiring exceptions to the instructions is to advise the court of the error claimed. If there was anything in this trial, as to which the plaintiff and the trial court were well advised, it was that the defendant hotel was contending that the 1953 ordinance adopting the uniform building code was not retroactive in its application, and that it was not applicable to the ramp on which the plaintiff slipped and fell. The trial court had ruled that the ordinance was applicable; had admitted it in evidence over strenuous objection; had indicated his intention to give instructions Nos. 6 and 7, to which we have referred, despite the plaintiff's exceptions thereto. It is clear that instruction No. 8 was a proximate-cause instruction, and the defendant had nothing left to argue about, except proximate cause. Instructions Nos. 6 and 7 amounted to a directed verdict, if the grade of the ramp and the absence of hand-

rails was a proximate cause of the plaintiff's slip and fall. Under these circumstances, the defendant hotel waived nothing by requesting instruction No. 8. As the supreme court of Illinois said in *North Chicago Electric Ry. Co. v. Peuser* (1901), 190 Ill. 67, 73, 60 N. E. 78,

" . . . Being unable to induce the court to instruct the jury according to its view of the true legal principle affecting its rights, the appellant company then presented a series of instructions embodying the theory of the law on the point as held by the court, as the most favorable declaration from the court to the jury possible to be obtained. The appellant company was not required to abandon all chances of a favorable verdict because the court would not grant an instruction to which it believed it was entitled. Without impropriety or the loss of the right to complain of the refusal of the court to declare the law as the company believed it to be, counsel for the appellant company might prepare instructions applicable to its cause in that view of the law which the court had announced that it entertained. The appellant company was powerless to combat the view of the court otherwise than by excepting thereto and preserving such exceptions, as was here done. Its position in the trial court and in this court are in nowise inconsistent. It urged there the same theory of the law that it urges here, and it is nowise at fault for the error which occurred, and consequently not estopped."

See, also, *Wallner v. Chicago Consolidated Traction Co.* (1910), 245 Ill. 148, 153, 91 N. E. 1053.

The defendant hotel only asked for an instruction as to proximate cause embodying the trial court's theory of the law which had been chosen over the objection of the defendant. The appellant neither mislead nor invited the court into error; there was no waiver and no estoppel.

For the reasons indicated, the cause will be remanded to the superior court with instructions to set aside the verdict of the jury and the judgment entered thereon, and to grant the defendant, Leopold Hotel Company, a new trial.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.