Inderson P. **KARNA**, Plaintiff,

v.

**BYRON REED SYNDICATE, # 4 et al.,**
**Defendants.**

Civ. No. 71-0-377.

United States District Court,
D. Nebraska.

April 18, 1974.

John J. Higgins, Jr., Omaha, Neb., for plaintiff.

Robert W. Haney, Jr., Omaha, Neb., for defendant Byron Reed Syndicate # 4.

Keith Howard, Omaha, Neb., for Byron Reed Co., Inc.

D. Nick Caporale, Omaha, Neb., for Defendant How & Associates.

DENNEY, District Judge.

This matter comes before the Court for decision following trial to the Court. Jurisdiction is established pursuant to 28 U.S.C. § 1332. This opinion shall constitute the Court's findings of fact and conclusions of law, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Defendant Stanley J. How & Associates contracted with Continental Properties for the design and supervision of the construction of a building to be known as Continental Towers and located in downtown Omaha, Nebraska. The structure was accepted by the owner as completed on December 2, 1966. The Continental Towers was constructed as a long term, permanent, security apartment type dwelling. Its entrance consisted of two sets of glass doors. The first set of doors opened into a security outer lobby which contained mail boxes for residents and a communication system for visitors to use. The procedure for operating this system was that a visitor would ring a resident's apartment and then wait for the resident to buzz the inner security door, so that it could be opened. Through the inner doors was a small inner lobby in which elevators could be found.

Sometime after the completion of the building, but prior to April 1, 1971, a decision was made by the owners, de-

fendant Byron Reed Syndicate #4, and the manager, Byron Reed Company, Inc.,' to change the operation of the Continental Towers to a hotel-motel type of establishment, because of a lack of occupancy in the building. An interior decorator was employed for the inner lobby and a registration desk was constructed near the inner glass doors. The inner glass door closest to the desk was locked permanently and its handle was removed. This handle was a rectangular, flat piece of metal on the inner metal frame about halfway up the door. The other door was left open for the general use of the public. Its handle was left in place and it was of the same variety as the one removed.

Prior to and on April 1, 1971, plaintiff was employed by the Gibbs Hill Company as a cost engineer and resided in New York City. In the afternoon of March 29, 1971, plaintiff came to Omaha, Nebraska, pursuant to that employment. He was taken by airport limousine to the Continental Towers and helped with his baggage through both sets of glass doors by the operator of the airport limousine. The next two days, on March 30 and March 31, 1971, plaintiff left the Continental Towers in the morning and returned each evening. On the morning of April 1, 1971, plaintiff again prepared to leave the building, but stopped at the check-in desk to inquire as to laundry facilities. At that time, Carolyn Harkins, the resident manager, was behind the desk and she was engaged in conversation with two people. Plaintiff was unable to get Ms. Harkins' attention and he turned to leave the building. He took a step or step and one-half and walked into the inner glass door that was unlocked for public use.

The plaintiff's nose was cut and injured, for which he was treated at a local hospital. Subsequent repair surgery was also required and plaintiff suffered some pain until the end of May, 1971.

A permanent scar remains on plaintiff's nose. Plaintiff lost two days of work from the accident and contends that the humiliation of having to explain the circumstances of his injury caused him to lose a raise and his job. Plaintiff seeks recovery for these damages and for the future embarrassment that will result when people ask and he must explain how he injured his nose.

Plaintiff contends that the doors were negligently designed, maintained and installed by the defendants. Plaintiff contends the glass should have been heavier, so it would not have broken; that the desk was too close to the doors; and that a metal push-pull bar should have been placed across the door to warn persons of its presence.[1] The defendants deny any negligence and allege that the plaintiff was contributorily negligent which should bar his recovery.

The duty of the owner and operator of premises under these circumstances is to exercise ordinary care to keep the premises safe for the invitee plaintiff's use. Lund v. Mangelson, 183 Neb. 99, 158 N.W.2d 223 [1968]. Moreover, the owner and operator must take reasonable precautions to protect the invitees from foreseeable dangers in arrangement and use of the premises. Hansen v. First Westside Bank, 182 Neb. 664, 156 N.W.2d 790 [1968]. The duty of the architect is to use the standard of care ordinarily exercised by members of that profession, taking into account the foreseeable use of the building and persons or property that might be injured thereby. A. E. Investment Corp. v. Link Builders, Inc., 62 Wis.2d 479, 214 N.W.2d 764 [1974].

At trial, the expert testimony showed that, as originally constructed, the door met all specifications of ordinance and of custom in the city. It was not proved that any thicker glass should have been used in the door itself. It was also not proven, for the use intended, that a

---

1. Plaintiff has also alleged breach of warranty, but the Court can find no basis in law or fact for this claim.

push-pull bar extending across the door was necessary for safety.

 The subsequent changes in the building which caused the modifications in the lobby were not made by the architect and it was not consulted as to those changes. The Court finds that the placing of the hotel-type check-in desk near the inner glass doors was not foreseeable to the architect. For these reasons, the Court finds that the architect defendant, How & Associates, did not breach its duty to the plaintiff.

The negligence of the remaining defendants is a different question. Although the evidence does not show any individual breaches of their duties, i. e., the glass was too thin or the push-pull bar should have been used, it is the Court's finding that the arrangement, the placing of the desk in such close proximity to the inner glass doors, in combination with these other omissions, did constitute negligence. It was foreseeable that persons would stop at the desk, then quickly turn and leave. As the court said in Jiffy Markets, Inc. v. Vogel, 340 F.2d 495 [8th Cir. 1965], a similar case, "The invisibility of transparent glass, by its very nature, is likely to deceive the most prudent person . . . " Having that invisibility so close to the desk, without markings of any sort on the doors was an invitation for injury.

However, the Court's inquiry is not finished. This is not the *Jiffy Markets* case, because the plaintiff was not unfamiliar with the dangerous condition. Plaintiff had gone in and out of those inner doors on three consecutive days. The Court finds that plaintiff knew, or should have known, of the dangerous condition of the interior of the lobby and registration desk in relation to the inner doors. Whitcomb v. State Federal Savings & Loan Ass'n., 190 Neb. 26, 205 N.W.2d 652 [1973]. As such, the Court finds plaintiff was guilty of contributory negligence in a degree more than slight in relation to the gross negligence of the defendants, Byron Reed Syndicate # 4 and Byron Reed Company, Inc., to bar his recovery for his damages.

An order denying recovery and dismissing this case will be entered contemporaneously herewith.