678 P.2d 41

Mildred G. STEPHENS, Plaintiff-Appellant, Cross-Respondent,

v.

·Thornton B. STEARNS and Diane C. Stearns, husband and wife, Defendants-Respondents,

and

Ronald Koch, et ux., husband and wife, Defendants, Third-Party-Plaintiffs, Cross-Defendants, Respondents,

and

Arthur M. Albanese, et ux., husband and wife, Defendants, Cross-Claimants, Respondents, Cross-Appellants,

and

John Does 1 through 8; and XYZ Corporations 1 through 8, Defendants,

and

City of Boise, Third-Party-Defendant.

No. 13976.

Supreme Court of Idaho.

Jan. 12, 1984.

Rehearing Denied March 8, 1984.

Richard E. Hall, and Mark S. Prusynski, of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for appellant Stephens.

Frank W. Stoppello, and J.D. Merris, Boise, for defendants, cross-claimants, respondents-cross-appellants, Albaneses.

Ronald M. Morris, Nickolas John Dibert, Quane, Smith, Howard & Hull, Boise, for defendants-respondents, Stearns.

Craig L. Meadows, and Eugene A. Ritti, of Hawley Troxell Ennis & Hawley, Boise, for defendants, third-party-plaintiffs, cross-defendants, respondents, Kochs.

DONALDSON, Chief Justice.

This is an appeal from directed verdicts in favor of all the defendants and from the denial of plaintiff's motion for new trial and/or reconsideration. In addition, defendant Albanese cross-appeals from a denial of his motion for summary judgment based on the statute of limitations.

Plaintiff-appellant Stephens filed this suit on October 2, 1978, for personal injuries she sustained on July 15, 1977, from a fall on an interior stairway of her apartment. Plaintiff's apartment, located in a Boise apartment complex, was a "townhouse" consisting of two separate floors connected by an internal stairway.

The apartments were built by defendant Koch and sold to defendant Stearns soon after completion in 1973. Defendant Stearns was plaintiff's landlord from the time she moved into the apartment in 1973 through the time of plaintiff's fall on July 15, 1977. Defendant Albanese was the architect who designed and later inspected the apartment complex.

Plaintiff's suit is based on the alleged negligence of the defendants in failing to provide a handrail for the stairway. Plaintiff claims this failure was the cause of her injuries. The architectural plans and specifications called for handrails as required by the Uniform Building Code which had been adopted by a Boise ordinance. Although the apartments did not comply with the building code, upon completion the apartments were inspected and certified to be in compliance with the code by the city inspectors.

Various motions for summary judgment were made by defendants before trial. All of these motions were denied. On cross-appeal, defendant Albanese asserts that the trial court erred in denying his motion for summary judgment based upon the two-year statute of limitations codified as I.C. § 5-219(4).

Following the presentation of plaintiff's case, all of the defendants moved for directed verdicts. The motions were granted based upon the trial court's holding that plaintiff had failed to show that the absence of a handrail was causally related to her injury, that Albanese did not owe a duty of care to the plaintiff, that Koch as builder/vendor was not liable under theories of strict liability or negligence, and that Stearns did not owe a duty of care to the plaintiff.

Plaintiff then filed a motion for a new trial and/or reconsideration asserting that there was sufficient evidence to present a jury question with respect to causation and that defendants Stearns, Koch and Albanese each owed plaintiff a duty of care. This motion was denied and this appeal followed.

The issues on appeal are essentially as follows: (1) Was there sufficient evidence for the jury to determine if the absence of a handrail was an actual cause of plaintiff's injuries? (2) Did any, or all, of the defendants owe plaintiff a duty of care? In addition, the cross-appeal raises the following issue: Was plaintiff's cause of action against defendant Albanese barred by the statute of limitations? We will first address the causation issue as it applies to all the defendants and then consider the other issues as they apply to each individual defendant.

I.

CAUSATION

■ Our standard of review is well established. One who moves for directed verdict pursuant to I.R.C.P. 50(a) thereby admits the truth of the adverse evidence and every inference that may legitimately

be drawn therefrom in the light most favorable to the opposing party. *Owen v. Burcham*, 100 Idaho 441, 599 P.2d 1012 (1979); *Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102 (1974); *Curtis v. Dewey*, 93 Idaho 847, 475 P.2d 808 (1970). Such a motion should not be granted if there is substantial evidence to justify submitting the case to the jury. *Owen v. Burcham, supra; Barlow v. International Harvester Co., supra.* "Substantial" evidence is not, however, synonymous with uncontradicted evidence. It is enough that the evidence is of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion was made is proper. *Owen v. Burcham, supra; Barlow v. International Harvester Co., supra.*

When viewed in the light most favorable to appellant, the facts are as follows: On the evening of July 15, 1977, Mrs. Stephens went to visit friends. While there she had two drinks. She returned to her apartment a little past 10:00 p.m. Mrs. Stephens turned on the television in the living room and went upstairs to change clothes. After changing her clothes, she attempted to go downstairs to watch television. As Mrs. Stephens reached the top of the stairway, she either slipped or fell forward. She testified that she "grabbed" in order to catch herself. However, Mrs. Stephens was unable to catch herself and she fell to the bottom of the stairs. As a result of the fall, she suffered serious injury. The evidence further showed that the stairway was approximately thirty-six inches wide and did not have a handrail although required by a Boise ordinance.

In ruling on the motions for directed verdict, the trial judge concluded that there was "an absolute lack of evidence" and that "to find a proximate cause between the absence of the handrail and the fall suffered by the plaintiff would be absolutely conjecture and speculation." (Although the trial judge's conclusion referred to "proximate cause," it is apparent that he was referring to factual or actual cause. *See Munson v. State, Department of Highways*, 96 Idaho 529, 531 P.2d 1174 (1975).)

We disagree with the conclusion of the trial judge.

We have considered the facts set out above in conjunction with the testimony of Chester Shawver, a Boise architect called as an expert in the field of architecture, that the primary purpose of a handrail is for user safety. We are left with the firm conviction that there is sufficient evidence from which reasonable jurors could have concluded that the absence of a handrail was the actual cause of plaintiff's injuries; *i.e.*, that plaintiff would not have fallen, or at least would have been able to catch herself, had there been a handrail available for her to grab.

In addition, we do not believe that the jury would have had to rely on conjecture and speculation to find that the absence of the handrail was the actual cause. To the contrary, we believe that reasonable jurors could have drawn legitimate inferences from the evidence presented to determine the issue. This comports with the general rule that the factual issue of causation is for the jury to decide. *McKinley v. Fanning*, 100 Idaho 189, 595 P.2d 1084 (1979); *Munson v. State, Department of Highways, supra.* In addition, courts in several other jurisdictions, when faced with similar factual settings, have held that this issue is a question for the jury. *See Washington v. District of Columbia*, 429 A.2d 1362, 1369 (D.C.App.1981); *Montgomery v. Engel*, 179 N.W.2d 478, 484 (Iowa 1970); *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 483 P.2d 1029, 1032–33 (1971); *In re Lattimore's Estate*, 35 A.D.2d 1069, 316 N.Y.S.2d 363, 365 (1970); *Fay v. Allied Stores Corp.*, 43 Wash.2d 512, 262 P.2d 189, 193 (1953); *Cossette v. Lepp*, 38 Wis.2d 392, 157 N.W.2d 629, 633 (Wis. 1968). Therefore, we hold that there was sufficient evidence from which the jury could have concluded that the absence of the handrail was the actual cause of plaintiff's injuries.

## II.

### STATUTE OF LIMITATIONS

On cross-appeal, defendant Albanese appeals from the trial court's denial of his

motion for summary judgment. Defendant Albanese contends that the two-year limitation period of I.C. § 5–219(4) applies here, and that it expired prior to the time when plaintiff filed suit.

The trial court, in denying the motion, analyzed the interplay of Idaho Code §§ 5–219(4) and 5–241. Albanese argues however, that such an analysis was unnecessary because I.C. § 5–241 does not apply to the facts in this case.

■ I.C. § 5–219(4) sets out a two-year period as the statute of limitations for professional malpractice in general. The two-year period begins to run "as of the time of the occurrence, act or omission complained of." I.C. § 5–241 sets a limit of six years at which time a tort cause of action arising out of the design or construction of improvement to real property will be deemed to have accrued, if not previously accrued. Plaintiff's cause of action against Albanese alleges negligent inspection of the apartment complex. Thus, the facts of this case bring the cause of action within I.C. § 5–241 because plaintiff's tort cause of action is one which arises out of the construction of an improvement to real property.

Albanese contends that I.C. § 5–241 does not apply here, arguing that this section only applies if the cause of action has not previously accrued. According to Albanese, plaintiff's cause of action accrued at the time when Albanese performed his allegedly negligent inspection. The error in Albanese's analysis stems from the fact that plaintiff did not possess a cause of action against Albanese at that time. In addition, under such an analysis, every cause of action arising out of the construction of an improvement to real property, and which is included in I.C. § 5–219(4), would by definition accrue prior to six years following completion of the improvement, thus rendering I.C. § 5–241(a) meaningless.

It is axiomatic that in order to recover under a theory of negligence, the plaintiff must prove actual damage. As a general rule "the statute of limitations does not begin to run against a negligence action until some damage has occurred." W. Prosser, Handbook of the Law of Torts § 30 (4th ed. 1971) (footnote omitted). Although the legislature has modified this general rule by enacting I.C. § 5–241, that section causes accrual only if one's cause of action has not accrued prior to six years after completion of construction. Such is not the case here.

Under the facts in this case, plaintiff clearly filed suit within the statutory limit. Plaintiff's cause of action accrued on July 15, 1977, the day she sustained her injuries. Albanese admits in his brief that his last chance to be negligent was May 8, 1973, the day on which he made his final inspection. Thus, plaintiff's cause of action accrued within the six-year limit of I.C. § 5–241(a). According to I.C. § 5–219(4), plaintiff then had two years from July 15, 1977, in which to file suit. Therefore, when she filed suit on October 2, 1978, the statute of limitations on her cause of action against defendant Albanese had not expired.

■ This holding is not inconsistent with our conclusions in the recent case of *Twin Falls Clinic & Hospital Bldg. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982). *Twin Falls Clinic* involved a professional malpractice action against an architect for his allegedly defective design of a building. In analyzing I.C. § 5–241, we stated:

"[T]he legislature has apparently engrafted a limited discovery exception in the area of 'tort' liability arising out of the design or construction of improvements to real property. It is to be noted that such exemption would only be applicable to latent defects since patent defects by definition would be those which should have been discovered."

*Twin Falls Clinic, supra* at 23, 644 P.2d at 345. Both plaintiff and defendant Albanese have attempted to apply this analysis to the facts of the case at bar. However, both parties have apparently misunderstood our statement in *Twin Falls Clinic.*

The above quotation was not intended to be a broad statement expressing the general application of I.C. § 5–241. Rather, it was an expression of how I.C. § 5–241 functions in the narrow setting of an action alleging defective design. Plaintiff here has not sought to prove that defendant Albanese's design was defective, but has alleged that Albanese was negligent in his inspection of the apartment. The following, more general statement from *Twin Falls Clinic* is applicable here: "A cause of action founded in professional malpractice arising out of the design or construction of improvements to real property must be brought within two years of the discovery of the alleged malpractice and in no event later than eight years following the completion of the construction." *Twin Falls Clinic, supra* at 24, 644 P.2d at 346. Plaintiff complied with this in the filing of her cause of action. Since plaintiff's filing was timely, we affirm the trial court's dismissal of defendant Albanese's motion for summary judgment.[1]

## III.

## DUTY OF CARE

### A. DEFENDANT ALBANESE

The trial judge, in granting defendant Albanese's motion for directed verdict, concluded that Albanese owed no duty to plaintiff. Instead, the trial judge concluded that Albanese owed a duty only to defendant Koch, the contractor, and that Albanese had discharged that duty.

 It appears that the trial judge confused Albanese's contractual duty with his duty of reasonable care. Albanese owed a contractual duty to Koch which he apparently discharged. However, Albanese also owed a duty to exercise the ordinary skill of his profession in the inspection he made of the apartments. We agree with the Florida Supreme Court that:

"An architect may be liable for negligence in failing to exercise the ordinary skill of his profession, which results in the erection of an unsafe structure whereby anybody lawfully on the premises is injured.... They are under a duty to exercise such reasonable care, technical skill and ability, and diligence as are ordinarily required of architects in the course of their plans, *inspections* and supervisions during construction for the protection of any person who foreseeably and with reasonable certainty might be injured by the failure to do so."

*Conklin v. Cohen,* 287 So.2d 56, 61 (Fla. 1973) (quoting *Geer v. Bennett,* 237 So.2d

---

1. We are compelled to identify three flaws contained in the dissent.

First, in analyzing the interplay between I.C. §§ 5–219(4) and 5–241, the dissent seems to imply that I.C. § 5–241 was enacted after the amendment of I.C. § 5–219(4). Thus, when Justice Bakes cites the particular language of I.C. § 5–241, "nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action," the language appears to have been directly aimed at I.C. § 5–219(4). However, we must point out that I.C. § 5–219(4) was amended to its current form six years following the enactment of I.C. § 5–241.

Second, the dissent cites *Martin v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978), in support of its argument that the cause of action accrues at the time of the negligent act. *Martin* is an attorney malpractice case dealing with a negligent probate of a will. We note that the cause of action in *Martin* began to run at the time of the negligent act because damage occurred immediately at that time. Therefore, contrary to the statement in the dissent, our opinion in this case is not in direct conflict with *Martin,* but in fact is consonant with *Martin.*

Lastly, the dissent makes the following statement:

"The majority implies that unless I.C. § 5–219(4) is interpreted to accrue a cause of action at the time of injury or damage, I.C. § 5–241(a) would be rendered effectively repealed or meaningless. However, there are several other defendants in this action, including the builder and the owner, who would not be covered by I.C. § 5–219(4)."

Apparently, the dissent fails to notice that, in fact, both the builder and the owner *are* covered by I.C. § 5–219(4). I.C. § 5–219(4) contains the statute of limitations not only for professional malpractice actions and wrongful death actions, but, also, for "[a]n action to recover damages ... for an injury to the person." Since Ms. Stephens' causes of action herein are all based upon an injury she sustained due to the alleged negligence of the architect, builder and owner, the limitation period of I.C. § 5–219(4) applies to all of the defendants in this case.

311 (Fla.App.1970)) (emphasis added). *See also Karna v. Byron Reed Syndicate # 4*, 374 F.Supp. 687 (D.Neb.1974). We hold, therefore, that defendant Albanese did owe a duty to plaintiff to exercise the ordinary skill of his profession, and that it is a jury question as to whether that duty was breached.

Defendant Albanese argues that even if he breached a duty owed to plaintiff, any initial negligence on his part was superseded, as a matter of law, by the subsequent negligence of the other defendants and the city inspectors. We are not persuaded.

We have previously held that an intervening, superseding cause will be deemed to supersede a prior cause only when the intervening cause is found to have been an extraordinary action that was unforeseen, unanticipated and not the probable consequence of the original negligence. *Gavica v. Hanson*, 101 Idaho 58, 608 P.2d 861 (1980); *Dewey v. Keller*, 86 Idaho 506, 388 P.2d 988 (1964). In addition, such a determination is one which should generally be left for the jury to make. *Dewey v. Keller, supra*. We are unwilling to conclude as a matter of law that the actions of Koch, Stearns and the city inspectors were so extraordinary and unforeseeable as to constitute intervening, superseding causes. It is a question for the jury. Therefore, we reverse the directed verdict in favor of defendant Albanese and remand for a new trial of plaintiff's negligence action against defendant Albanese.

## B. DEFENDANT KOCH

In granting defendant Koch's motion for directed verdict, the trial judge concluded, as he had for defendant Albanese, that Koch owed no duty to plaintiff. In reviewing this conclusion we note that Koch occupied the positions of both builder and vendor of the apartments.

We agree that Koch, as a vendor, did not owe a duty to plaintiff since the lack of the handrail was known to both defendant Stearns, the vendee/landlord, and plaintiff. *See* Restatement (Second) of Torts §§ 352–353 (1965). Koch's status as a builder, however, presents a different question. As a builder, Koch owed a common-law duty of ordinary care, to perform his work in a workmanlike manner. "Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury." *Whitt v. Jarnagin*, 91 Idaho 181, 188, 418 P.2d 278, 285 (1966) (citations omitted) (quoted approvingly in *Harper v. Hoffman*, 95 Idaho 933, 935, 523 P.2d 536, 538 (1974)). Therefore, we hold that defendant Koch did owe a duty to plaintiff and that plaintiff presented adequate evidence to have the jury determine whether Koch breached this duty by failing to construct the apartments in compliance with the plans.

Koch contends that any negligence on his part was superseded by intervening causes. As we previously stated, in part III. A. of this opinion, such a determination is for the jury to make. Lastly, Koch asserts that plaintiff was as a matter of law, at least fifty percent negligent thus barring recovery from any of the defendants. However, this question is also one which should be left to the jury unless the facts are undisputed and only one reasonable conclusion can be drawn therefrom. *Deshazer v. Tompkins*, 93 Idaho 267, 460 P.2d 402 (1969). Here the facts are disputed, thus presenting a jury question.

Plaintiff has argued that defendant Koch was also negligent per se for violating the building code, contained in a Boise ordinance, which required at least one handrail on the stairway in question here.[2] We have previously alluded to the

---

**2.** The Boise ordinance adopted § 3305(i) of the 1970 Uniform Building Code which provides: "(i) Handrails. Stairways shall have handrails on each side, and every stairway required to be more than 88 inches in width shall be provided with not less than one intermediate handrail for each 88 inches of required width. Intermediate handrails shall be spaced approximately equal within the entire width of the stairway.

fact that violation of an ordinance may constitute negligence per se in the same manner as does violation of a statute. *See Bale v. Perryman*, 85 Idaho 435, 443, 380 P.2d 501, 505 (1963); *State ex rel. McKinney v. Richardson*, 76 Idaho 9, 15, 277 P.2d 272, 275 (1954). In addition, this appears to be the majority rule. *See* W. Prosser, Handbook of the Law of Torts § 36, p. 201 n. 28 (4th ed. 1971); 57 Am.Jur.2d *Negligence* §§ 269–270 (1971); 65 C.J.S. *Negligence* 19(3)b.(b) (1966). In order for the violation of an ordinance to be considered negligence per se, the ordinance must be applicable; that is, the ordinance "must be designed to protect (1) the class of persons in which the plaintiff is included (2) against the type of harm which has in fact occurred as a result of its violation." *Kinney v. Smith*, 95 Idaho 328, 331, 508 P.2d 1234, 1237 (1973) (setting out the test for whether a statute is applicable). In our view, it is clear (and none of the parties have raised it as an issue) that the ordinance in question was designed to protect users of stairways from the very type of injury suffered here; *i.e.*, injuries resulting from falling down stairways. Therefore, the ordinance is applicable and violation of the ordinance constitutes negligence per se. Of course, plaintiff must prove in addition that the negligence was the cause of the injury—a question we have determined to be for the jury. *See* Part I., *supra*. Therefore, we reverse the directed verdict in favor of defendant Koch and remand for a new trial of plaintiff's negligence action against defendant Koch.

## C. DEFENDANT STEARNS

In granting defendant Stearns' motion for directed verdict, the trial court concluded that Stearns had not violated the common-law duty owed by a landlord to a tenant. Under the common-law rule, a landlord is generally not liable to the tenant for any damage resulting from dangerous conditions existing at the time of the leasing. Restatement (Second) of Torts § 356 comment a (1965); W. Prosser, Handbook of the Law of Torts § 63 (4th ed. 1971). However, there are a number of exceptions to the general rule depending on whether (1) there is a hidden dangerous condition on the premises of which the landlord is aware but the tenant is not; (2) the land is leased for purposes involving admission of the public; (3) the premises are still in the control of the landlord; and, (4) the landlord has negligently repaired the premises. Restatement (Second) of Torts §§ 357–362 (1965); Prosser, *supra* at § 63.

Rather than attempt to squeeze the facts of this case into one of the common-law exceptions, plaintiff instead has brought to our attention the modern trend of the law in this area. Under the modern trend, landlords are simply under a duty to exercise reasonable care under the circumstances. The Tennessee Supreme Court had the foresight to grasp this concept many years ago when it stated: "The ground of liability upon the part of a landlord when he demises dangerous property has nothing special to do with the relation of landlord and tenant. It is the ordinary case of liability for personal misfeasance, which runs through all the relations of individuals to each other." *Wilcox v. Hines*, 100 Tenn. 538, 46 S.W. 297, 299 (1898). Seventy-five years later, the Supreme Court of New Hampshire followed the lead of *Wilcox*. *Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528 (1973). The *Sargent* court abrogated the common-law rule and its exceptions, and adopted the reasonable care standard by stating:

"Handrails shall be placed not less than 30 inches nor more than 34 inches above the nosing of tread, and ends of handrail shall be returned or shall terminate in newel posts or safety terminals.

"Exceptions: (1) Stairways 44 inches or less in width and stairways serving one individual dwelling unit in Group H or I Occupancies [in which apartment houses are included] may have one handrail, except that such stairways open on one or both sides shall have handrails provided on the open side or sides. (2) Stairways having less than four risers need not have handrails.

"Handrails projecting from walls shall have a space of not less than 1½ inches between the wall and the handrail."

"We thus bring up to date the other half of landlord-tenant law. Henceforth, landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm.... A landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk."

*Id.* at 534 (Citations omitted).

Tennessee and New Hampshire are not alone in adopting this rule. As of this date, several other states have also judicially adopted a reasonable care standard for landlords. *Cummings v. Prater*, 95 Ariz. 20, 386 P.2d 27 (1963); *Brennan v. Cockrell Investments, Inc.*, 35 Cal.App.3d 796, 111 Cal.Rptr. 122 (1973); *Young v. Garwacki*, 380 Mass. 162, 402 N.E.2d 1045 (1980); *Curry v. New York City Housing Authority*, 77 A.D.2d 534, 430 N.Y.S.2d 305 (1980); *Stephenson v. Warner*, 581 P.2d 567 (Utah 1978); *Pagelsdorf v. Safeco Insurance Co. of America*, 91 Wis.2d 734, 284 N.W.2d 55 (1979). *See also Mansur v. Eubanks*, 401 So.2d 1328 (Fla.1981) (holding residential landlord has duty to reasonably inspect and repair in order to deliver a reasonably safe dwelling to tenant); *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 427 N.E.2d 774 (1981) ("abrogation of this [landlord] immunity has been advocated by legal commentators, and the overwhelming majority of states have abolished, either in whole or in part, the traditional immunity.").

■ In commenting on the common-law rule, A. James Casner, Reporter of Restatement (Second) of Property—Landlord and Tenant, has stated: "While continuing to pay lip service to the general rule, the courts have expended considerable energy and exercised great ingenuity in attempting to fit various factual settings into the recognized exceptions." Restatement (Second) of Property—Landlord and Tenant ch.

17 Reporter's Note to Introductory Note (1977). We believe that the energies of the courts of Idaho should be used in a more productive manner. Therefore, after examining both the common-law rule and the modern trend, we today decide to leave the common-law rule and its exceptions behind, and we adopt the rule that a landlord is under a duty to exercise reasonable care in light of all the circumstances.[3]

■ We stress that adoption of this rule is not tantamount to making the landlord an insurer for all injury occurring on the premises, but merely constitutes our removal of the landlord's common-law cloak of immunity. Those questions of hidden danger, public use, control, and duty to repair, which under the common-law were prerequisites to the consideration of the landlord's negligence, will now be relevant only inasmuch as they pertain to the elements of negligence, such as foreseeability and unreasonableness of the risk. We hold that defendant Stearns did owe a duty to plaintiff Stephens to exercise reasonable care in light of all the circumstances, and that it is for a jury to decide whether that duty was breached. Therefore, we reverse the directed verdict in favor of defendant Stearns and remand for a new trial of plaintiff's negligence action against defendant Stearns.

■ Plaintiff has also argued that defendant Stearns was negligent per se because he violated the Uniform Building Code contained in a Boise ordinance. As we held earlier herein, violation of the ordinance constitutes negligence per se. *See* Part III. B., *supra.* However, defendant Stearns' contention that he may be excused from the imposition of negligence per se because he relied upon the certificates of occupancy issued by the Boise city inspectors is well-founded. Restatement (Second) of Torts § 288A (1965); 57 Am.Jur.2d *Negligence* § 249 (1971); *see also State ex rel. McKinney v. Richardson*, 76 Idaho 9, 14–

---

**3.** Our embracement of this rule is further supported by our legislature's enactment of a statutory version of the implied warranty of habitability, I.C. § 6–320. *See Worden v. Ordway,* 105 Idaho 719, 672 P.2d 1049 (1983).

15, 277 P.2d 272, 274 (1954). Whether Stearns is in fact excused is a jury question. 57 Am.Jur.2d *Negligence* § 249 (1971).

Judgment affirmed only as to the statute of limitations; in all other respects, judgment reversed and remanded for a new trial consistent with the views expressed herein.

Costs to appellant.

No attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., concur.

McQUADE, J. Pro Tem., sat but did not participate.

BAKES, Justice, concurring in part and dissenting in part: .

I concur in the result reached by the majority opinion except Section II, dealing with statute of limitations defense raised by the architect Albanese. The majority has incorrectly interpreted the language defining the time of accrual for a cause of action of professional malpractice under I.C. § 5–219(4).

The general rule at common law was that a cause of action does not accrue for negligence, including professional malpractice, until some damage occurred.

The majority does not deny, however, that the legislature has the power to commence the accrual of a cause of action prior to any damage occurring. Indeed, the majority acknowledges as much by stating, *ante* at 46, that while the general rule is that " 'the statute of limitations does not begin to run against a negligence action until some damage has occurred ...' the legislature has modified this general rule by enacting I.C. § 5–241 [which] section causes accrual only if one's cause of action has not accrued prior to six years after completion of construction."

The majority does not deny that the legislature, by enacting 5–219(4), in cases involving professional malpractice not involving a wrongful death, has set a specific time when the cause of action accrues irrespective of damage, *i.e.,* "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of ...."

The majority states, however, that "plaintiff's cause of action against Albanese alleges negligent inspection of the apartment complex. Thus, the facts of this case bring the cause of action within I.C. § 5–241 because plaintiff's tort cause of action is one which arises out of the construction of an improvement to real property." However, the majority does not analyze the limitation later set out in 5–241 which states, "Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action," and the further statement in 5–241(a), where it states, "Tort actions, *if not previously accrued,* shall accrue and the applicable limitation statute shall begin to run six years after the final completion of construction of such an improvement." By its express language, I.C. § 5–241 does not extend the limitation period for professional malpractice of an architect which is covered by any other statute.

The 1971 amendment to I.C. § 5–219(4), which added the special limitation provision for professional malpractice, used language implying fictional accrual without damage for actions of professional malpractice. As previously noted, we held in *Martin v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978), that the legislative intention of I.C. § 5–219(4) was to accrue an action for professional malpractice at the time of the negligent act or omission, in that case the probating of a will. By now holding that "accrual" under I.C. § 5–219(4), in the case at bar, requires damage or injury, the majority effectively reads out of the statute and repeals the following language:

"But in all other actions, whether arising from professional malpractice or otherwise, the cause of action *shall be deemed to have accrued as of the time of the occurrence, act or omission* complained of, and the limitation period shall not be extended by reason of any continuing

**260**

consequences or *damages resulting therefrom* ...." (Emphasis added.)

The majority implies that unless I.C. § 5–219(4) is interpreted to accrue a cause of action at the time of injury or damage, I.C. § 5–241(a) would be rendered effectively repealed or meaningless. However, I.C. § 5–241(a) would still apply to claims against building contractors and suppliers for property loss and consequential damages, which was probably the primary reason for adopting 5–241(a) in the first place. It is clear that because of the language in I.C. § 5–241 which states that "[n]othing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action," I.C. § 5–241 was not intended to change the limitation set out in I.C. § 5–219(4) relating to professional malpractice of the architect Albanese.

The majority's reliance on *Twin Falls Clinic & Hospital v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982), is misplaced. The holding in that case was that an architect, allegedly guilty of professional malpractice, could be estopped from asserting the two-year statute of limitations for professional malpractice under 5–219(4) because of his subsequent conduct in attempting to cover up his alleged negligence. The plurality opinion in that case did, by way of *dicta,* discuss the interplay of 5–219(4) and 5–241(a), but at no time discussed the specific language in 5–241 that "[n]othing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action." Nor did it discuss the language in 5–241(a) that "tort actions, *if not previously accrued,* shall accrue and the applicable limitation statute shall begin to run six years after the final completion of construction of such an improvement." The Court seriously errs today in its opinion by failing to acknowledge and follow the specific language in 5–241 states that "[n]othing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action." I.C. § 5–219(4) is the latest expression of legislative will, and it is clear that by using the language, "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom ...," the legislature intended a result contrary to that obtained by the majority opinion today.