706 P.2d 63

**Glenn R. STREIB and Patricia M. Streib, Plaintiffs-Appellants,**

v.

**Carleton G. VEIGEL, Carleton G. Veigel dba Veigel & Associates, Carleton G. Veigel dba Veigel & Bussman, Carl G. Veigel dba Veigel, Bussman & Wilkerson, and Does I Through V, Fictitiously Named, Defendants-Respondents.**

No. 15487.

Supreme Court of Idaho.

June 18, 1985.

Allen B. Ellis, Boise, for plaintiffs-appellants.

Brian K. Julian, of Quane, Smith, Howard & Hull, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal by plaintiffs from a summary judgment in favor of defendants in an action for malpractice by defendants, professional accountants who had prepared plaintiffs' income tax returns. The trial court held that the cause of action accrued at the time defendants prepared the income tax forms, that plaintiffs had not initiated the action within the applicable two-year statute of limitations, and that therefore the action was barred. We reverse.

The truth of the alleged facts, of course, remains for ascertainment at trial. However, at the point of summary judgment, those facts are construed most strongly in favor of plaintiffs. Plaintiffs contend that, in preparing plaintiffs' tax returns for the years 1976 through 1980, defendants negligently identified certain liabilities as being tax deductible when, in fact, such liabilities were not deductible for tax purposes. It is asserted that defendants negligently delayed advising the plaintiffs of the fact that, by accepted tax principles, the deductions would be disallowed, and that plaintiffs remained ignorant of the defects in their return until approximately July 1982. At that time, plaintiffs discharged defendant Veigel and retained the services of another accountant. Plaintiffs contend that, as a result of defendants' negligence, the Internal Revenue Service disallowed the deductions and assessed additional liability in the form of interest and penalties of more than $150,000. Plaintiffs also incurred additional damages in the form of costs for accountants and attorneys.

Plaintiffs filed the instant action on April 25, 1983. At oral argument, it was represented that the specific date upon which the Internal Revenue Service assessed interest and penalties does not appear in the record, the trial judge having considered it irrelevant. Defendants do not assert that the cause of action is untimely if measured

from the time of assessment of interest and penalties. Rather, defendants rely on their contention that plaintiffs' cause of action accrued at the time defendants prepared and filed the income tax returns.

Upon motion for summary judgment, the trial court stated:

"The injury occurred when the inadequate tax returns were filed. At that time, the plaintiffs incurred a legal obligation to the United States. Damage occurred at the time of filing since the plaintiffs were obligated to pay the full taxes due and were liable for interest and penalties and for taxes due and owing. The damage, while not final, existed and was easily ascertainable.... Both injury and damage occurred at the time of filing."

The trial court granted the motion for summary judgment and certified that judgment as final and appealable. *See* I.R.C.P. 54(b).

The specific issue posed in this case is, at what point in time does a cause of action accrue for professional accounting malpractice, such that the statute of limitations begins to run under the provisions of I.C. § 5–219(4). We specifically note that the statute is not restricted to professional malpractice, but appears to govern all actions for personal injuries. Thus, the provisions purporting to govern the accrual of causes of action for personal injuries outside the area of professional malpractice under this statute are more sweeping than has previously been noted by this Court. Here, the problem posed is professional malpractice in the form of negligent preparation of income tax returns, which alleged malpractice occurred more than two years prior to the time when the plaintiffs sustained damages of penalties and interest assessed by the Internal Revenue Service. In other cases in the general area of personal injury, it is not difficult to postulate situations wherein the act of the defendant will precede by more than two years the occurrence of damages to the plaintiff: the sale of a tainted but frozen piece of meat which is then stored by the purchaser for more than two years before it is prepared and eaten with resultant injuries; or a vintner's sale of a case of wine containing one poisoned bottle, which the customer more than two years later decants and consumes, sustaining tragic injuries as a consequence.

The majority of the decisions of this Court involving statute of limitations defenses have concerned medical malpractice. In 1964, in construing the statute of limitations then effective for malpractice cases, this Court adopted the "discovery rule," to the effect that a cause of action for medical malpractice did not accrue until the patient learned, or in the exercise of reasonable care and diligence should have learned, of the damages resulting from the doctor's negligence. *See Billings v. Sisters of Mercy of Idaho*, 86 Idaho 485, 498, 389 P.2d 224, 232 (1964). *Billings* treated only the problem of foreign objects left in the patient's body, but that rule was extended to cover misdiagnosis cases, in *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1970). Apparently in response to *Renner*, the legislature, in 1971, amended I.C. § 5–219(4) to provide that the discovery rule would *not* apply to malpractice cases, but at the same time incorporated therein two expressly-defined exceptions for foreign objects left in a patient's body and for fraudulent concealment of negligence. The statute presently limits the time for filing suit for professional malpractice to two years, as follows:

"5–219. **Actions against officers, for penalties, on bonds, and for professional malpractice or for personal injuries.** —Within two (2) years:

\* \* \* \* \* \*

"4. An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; provided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice

of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, *the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship* between the injured party and the alleged wrongdoer, and, provided further, that an action within the foregoing foreign object or fraudulent con-·cealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term 'professional malpractice' as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho." (Emphasis supplied.)

In the area of accounting malpractice, there are not many decisions dealing with the problem of the statute of limitations and the time of accrual of causes of actions. Even fewer in number are cases dealing with the negligent preparation of income tax returns and resultant Internal Revenue Service assessments following the expiration of statutes of limitations.

In *Moonie v. Lynch*, 256 Cal.App.2d 361, 64 Cal.Rptr. 55 (1967), the court, as here, had for its consideration the negligent preparation of income tax returns, with an Internal Revenue Service assessment having been imposed beyond the time of the ordinarily applicable statute of limitations. The court held, "[I]n a malpractice action against an accountant the statute of limitations does not run until the negligent act is discovered, or with reasonable diligence could have been discovered." 64 Cal.Rptr. at 58.

In *Isaacson, Stolper & Co. v. Artisan's Savings Bank*, 330 A.2d 130 (Del.1974), the court considered an action for accounting malpractice in the preparation of income tax returns and an assessment by the Internal Revenue Service at a time later than the expiration of the statute of limitations. The court held, 330 A.2d at 132, "The general law in this State is that the statute of limitations here involved begins to run at the time of the wrongful act, and ignorance of a cause of action, absent concealment or fraud, does not stop it." Nevertheless, the Delaware court, citing *Moonie v. Lynch, supra*, and its "discovery rule," stated, 330 A.2d at 133–134, "We agree in principle with the California Courts but not necessarily with a broad application of the rule to all malpractice cases. Application of the 'time of discovery' rule is limited, and each case must stand or fall on its own facts, and those facts will determine whether it is an exception to the [Delaware] Mastellone rule." The court cited with approval the New Mexico Court of Appeals' decision in *Chisholm v. Scott*, 526 P.2d 1300 (N.M.Ct. App.1974), which the court paraphrased as, "[I]n the relationship of accountant and client the trust and confidence that client places in the professional person places him in a vulnerable position should that trust and confidence be misplaced." Further, the *Isaacson* court agreed with the New Mexico court's rationale in *Chisholm* that the policy of the law is to encourage such trust and confidence, and likewise, that the duty of the law is to protect the client from the negligent acts of the professional person. Although the Delaware court recognized the general law that ignorance of a cause of action does not stop the operation

of the statute of limitations, nevertheless, it made an exception for accounting malpractice in the preparation of income tax returns.

A somewhat similar situation was presented in *Leonhart v. Atkinson*, 265 Md. 219, 289 A.2d 1 (1972). That court cited its general rule as follows:

"[L]imitations against a right or cause of action begins to run from the date of the alleged wrong and not from the time that wrong is discovered. [Citations.]

"The harshness of the general rule was readily observable in malpractice suits as it frequently left a victim of professional malpractice without a remedy because the initial wrong was not always discoverable until after limitations had run, even though due diligence was exercised. This has led to the creation of exceptions, one of which Maryland has adopted—'the discovery rule.'" 289 A.2d at p. 4.

The court then held that, absent fraud or concealment, "... the date the notice of the tax deficiency assessment was received by the Leonharts ... is the date limitations began to run adversely against [plaintiffs-] appellants' cause of action." The Maryland court later did adopt the discovery rule in preference to the occurrence-of-the-wrong rule. *See Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), cited with approval in *Johnson v. Nadwodny*, 55 Md. App. 227, 461 A.2d 67 (1983). *See also Brueck v. Krings*, 230 Kan. 466, 638 P.2d 904 (1982) (construing the Kansas statute providing that the "period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party"); *Alexander & Baldwin, Inc. v. Peat, Marwick & Mitchell Co.*, 385 F.Supp. 230 (S.D.N.Y.1974) (construing New York law); *Wilkin v. Dana R. Pickup & Co.*, 74 Misc.2d 1025, 347 N.Y.S.2d 122 (1973); *Feldman v. Granger*, 257 A.2d 421 (Md.1969). *Cf. Richard v. Staehle*, 70 Ohio App.2d 93, 434 N.E.2d 1379 (Ohio App.1980) (construing Ohio's restrictive one-year statute of limitations for professional malpractice to cover only attorneys, physicians, and professionals specifically

mentioned therein, and placing accountant malpractice within the general four-year tort statute of limitations).

In *Atkins v. Crosland*, 417 S.W.2d 150 (Tex.1967), the court addressed the question of accountant malpractice in the preparation of income tax returns when the Internal Revenue Service assessment occurred more than two years (the Texas statute of limitations) after the preparation of the returns. The court stated, 417 S.W.2d at 153:

"The general rule is that a cause of action sounding in tort accrues, in the absence of a statute to the contrary or fraudulent concealment, when the tort is committed. This rule obtains notwithstanding the fact that the damages, or their extent, are not ascertainable until a later date. [Citations.]

\*  \*  \*  \*  \*  \*

"Turning from general principles to the facts involved in the instant case, we have concluded that the plaintiff's cause of action did not arise until the tax deficiency was assessed by the Commissioner of Internal Revenue. Prior to assessment the plaintiff had not been injured. That is, assessment was the factor essential to consummate the wrong—only then was the tort complained of completed. If a deficiency had never been assessed, the plaintiff would not have been harmed and therefore would have had no cause of action.... In short, in the absence of assessment, injury would not have inevitably resulted."

Thus, the Texas court did not necessarily rely upon the discovery doctrine. Instead, it worked from the theory that the negligent preparation of tax returns does not constitute a completed tort, but that rather the tort is completed when and if, within three years of submission of the return, the Internal Revenue Service makes an assessment.

In *Chisholm v. Scott*, 86 N.M. 707, 526 P.2d 1300 (Ct.App.1974), the court also was presented with the question of whether the statute of limitations for accountant malpractice begins to run at the time of the

preparation of tax returns or at the time of the Internal Revenue Service assessment. While the main portion of the opinion deals with the purported difference between medical malpractice and accounting malpractice, the court, in a divided decision, held, "Within the limiting factors of this case ... the statute may not be deemed to have run until four years after notice had been given by the IRS. The liability imposed by this notice becomes the injury which forms the plaintiffs' cause of action." 526 P.2d at 1302.

Defendants draw our attention to no other authorities involving negligent preparation of income tax returns and the Internal Revenue Service's assessment of penalties after the statute of limitations would otherwise have expired. Defendants assert that the instant case is controlled by *Owyhee County v. Rife,* 100 Idaho 91, 593 P.2d 995 (1979). *Owyhee County* did indeed involve accountant malpractice. In that case, it was alleged that in thirteen consecutive years of auditing the accounts of Owyhee County, the defendant accountants had failed to discover that the county treasurer was embezzling large sums of money. The trial court granted summary judgment, on the basis that I.C. § 5–219(4) barred the claim, which had not been filed for more than two years after the accountant's work on the county records. We affirmed summary judgment, holding that I.C. § 5–219(4) applied to professional accountants, since they must be licensed by the State, and we stated, "We ... decline to create a discovery exception in an action for accountant's malpractice as alleged herein."

We hold that the instant case is distinguishable from *Owyhee County,* in that in *Owyhee County,* the damages to the county had already occurred at the time the audit was conducted, because the embezzlement had already taken place. In the instant case, no damages accrued to the plaintiffs until the time of the Internal Revenue Service's assessment of penalties and interest. Secondly, in the instant case, as contrasted with *Owyhee County,* fraudulent concealment of the damages is alleged, which allegation falls under an express exception to the legislature's abrogation of the discovery rule. *See Johnson v. Gorton,* 94 Idaho 595, 495 P.2d 1 (1972).

In *Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1984), our most recent application and analysis of I.C. § 5–219(4), we stated:

"As we have said, '[t]he gist of a malpractice action is negligence.' *Umphrey v. Sprinkel,* 106 Idaho 700, 682 P.2d 1247 (1983); *Trimming v. Howard,* 52 Idaho 412, 416, 16 P.2d 661, 662 (1932). 'It is axiomatic that in order to recover under a theory of negligence, the plaintiff must prove actual damage. As a general rule "the statute of limitations does not begin to run against a negligence action until some damage has occurred." ' *Stephens v. Stearns,* 106 Idaho 249, 254, 678 P.2d 41, 46 (1984). Since under the cause of action for wrongful birth, there is no defective child until and unless the birth occurs, logic dictates that the statute of limitations cannot begin to run until the date of birth."

*See also, Stoner v. Carr,* 97 Idaho 641, 550 P.2d 259 (1976). Similarly, in the instant case, no damage was suffered until the tax return was challenged and an assessment made by the Internal Revenue Service. Indeed, had the tax returns never been audited, no loss would have been suffered and plaintiffs-appellants would have had nothing to gain from filing suit.

Just as the court acknowledged the difficulty of plaintiff's discovering the medical problem involved in *Blake v. Cruz,* we recognize that discovery of a negligently prepared income tax return is most difficult. While Idaho's abrogation of the discovery rule (with the two statutorily noted exceptions) renders those decisions of jurisdictions which rely on a discovery rule of no assistance to us, we do find the reasoning of the Texas court in *Atkins v. Crosland, supra,* to be persuasive. By the very action of preparing an income tax return, an accountant is aware that no damage is incurred and consequently no potential tort is completed, until such time, if ever, that the Internal Revenue Service disputes the re-

turn and, as here, assesses penalties and interest. It is also further clear that delay in the completion of the tort cannot run forever, but is restricted by the time (three years) within which the Internal Revenue Service must make such a deficiency assessment. 26 U.S.C. § 6501.

If A sets a spring gun and two years elapse before B, a police officer, opens the door, has B's cause of action been barred by the statute of limitations? Or is the tort continuing in nature until B is damaged? Clearly the latter result should obtain. In the instant case, also, we hold that the tortious negligence is continuing in nature until plaintiffs suffer damage. In the ordinary course of events, the preparation and submission of income tax returns contemplate a review by the Internal Revenue Service, with damages resulting *at that time* if the returns have been erroneously prepared.

The policy behind the imposition of statutory time limits for the filing of legal claims was stated in *Renner v. Edwards*, 93 Idaho 836, 838, 475 P.2d 530, 532 (1970):

"It is eminently clear that statutes of limitation were intended to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of reasonable prosecution. They are, to be sure, a bane to those who are neglectful or dilatory in the prosecution of their legal rights. 1 Wood, Limitation of Actions, § 4, p. 8. As a statute of repose, they afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage. In such cases how resolutely unfair it would be to award one who has wilfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses."

Here, plaintiffs cannot in any way be deemed to have slept on their rights and the policy justifications for disallowing stale claims simply do not exist.

The cause is reversed and remanded for further proceedings consistent herewith. No costs or attorney's fees on appeal.

DONALDSON, C.J., and HUNTLEY, J., concur.

BISTLINE, J., concurs in the result.

BISTLINE, Justice, special concurrence:

I concur in the result. A better ground upon which to base this result, however, is art. I, § 18 of the Idaho Constitution. This section declares that: "Courts of justice shall be *open to every person*, and a speedy remedy afforded for *every injury* of person, property, or character, and right and justice shall be administered without sale, denial, delay, or prejudice." (Emphasis added.)

As I stated in *Theriault v. A.H. Robins Co., Inc.*, 108 Idaho 303, 698 P.2d 365, 371 (1985) (Bistline, J., dissenting), art. I, § 18 does not invalidate statutes of limitations *per se*. It does, however, require that "people be granted a reasonable opportunity to seek redress through this state's court system."

In *Theriault*, I quoted the language of Justice Shepard and Chief Justice Donaldson, as recorded in *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1970), in which they declared that allowing a statute of limitations to cut off a person's cause of action before he or she knew, or had a reasonable opportunity to learn of it, would be "manifestly unjust," "palpably unjust," "patently inane," "inconsistent with the concept of fundamental justice," and "manifestly inconsistent and unfair." *Theriault, supra*, 108 Idaho at 309–10, 698 P.2d at 371–72, quoting *Renner, supra* at 839, 842–43, 475 P.2d at 533, 536–37. Accordingly, these two Justices, joined by Justice McQuade, held that the forerunner of today's I.C. § 5–219(4) does not begin to run until a person knows or has had a reasonable opportunity to learn of his or her

cause of action. *Renner, supra,* at 838, 475 P.2d at 532.

The "discovery rule" adopted by the *Renner* Court did not explicitly ground its result in art. I, § 18, or any other constitutional provision. Nevertheless, the language of that opinion, as well as the unavoidable reasoning behind it, lead inexorably to one conclusion—the *Renner* discovery rule is constitutionally mandated pursuant to art. I, § 18. Thus, attempts to repeal or modify it by the legislature, which have subsequently occurred, are invalid and should be held unconstitutional.

As I documented in *Theriault,* the position from which I argue is far from novel; rather, it is rapidly becoming the universal rule in American jurisprudence. *See Theriault, supra,* 108 Idaho at 311–13, 698 P.2d at 373–75 (Bistline, J., dissenting). Following these decisions is neither radical nor extreme, but instead enables this Court to arrive at a fair and equitable solution in accommodating the various interests implicated in cases such as this one.

With the foregoing thus said, I would hold that the plaintiffs' cause of action is not barred by I.C. § 5–219(4), because they filed their law suit within two years of discovering the defendants' negligent acts. There is no basis for concluding that the plaintiffs could have reasonably discovered their cause of action at any earlier point in time than when they actually did. Thus, the plaintiffs have satisfied the mandate of I.C. § 5–219(4), and the defendants should be required to respond to plaintiffs' claims for damages.

Whether the discovery rule as announced in *Renner, supra,* is constitutionally required, and, whether I.C. § 5–219(4) can constitutionally make the classification it does between plaintiffs whose claims are premised on the existence of a foreign object or fraudulent concealment and those whose claims are premised on a different cause, is yet to be addressed by this Court. *Theriault, supra,* 108 Idaho at 309–14, 698 P.2d at 371–76 (Bistline, J., dissenting). As I stated in *Theriault,* these issues "demand deliberation." *Id.,* at 314, 698 P.2d at 376.

When ultimately considered, only two conclusions are plausible. First, no statute of limitations can constitutionally preclude an injured person from his day in court without first requiring that that person know of or have had reasonable opportunity to discover his cause of action. Second, I.C. § 5–219(4)'s classification of plaintiffs based upon the *type* of cause of action violates equal protection. *See Theriault, supra,* at 313–14, 698 P.2d at 375–76.

BAKES, Justice, dissenting:

I dissent. The majority of this Court continues to ignore the clear language of I.C. § 5–219(4) which states that in a professional malpractice action with a two-year statute of limitations, "the cause of action shall be deemed to have accrued *as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom ...."* The majority's extended discussion of cases from other jurisdictions is totally irrelevant since none of those jurisdictions have a statute similar to I.C. § 5–219(4). Those cases merely set out the common law on accrual "in the absence of a statute to the contrary." *Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967). In Idaho we have a statute contrary to the common law. Applying the statute to the present case, the plaintiffs complain of the negligent preparation of tax forms, and their complaint is barred by the two-year statute of limitations since it was not filed within two years of the negligent "act or omission complained of...."

The majority's continued adherence to the common law completely ignores, disregards, and attaches no meaning to I.C. § 5–219(4), which has been duly enacted by the legislature and is binding upon this Court. *See also Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1984) (Bakes, J., dissenting); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984) (Bakes, J., dissenting). "If we were dealing entirely with a common law rule, or even if we were dealing with I.C. § 5–219 as it existed at the time

of *Renner—i.e.,* prior to the 1971 amendment—the rule announced by the majority of the Court today might be a good rule. However, the legislature, by the 1971 amendment to I.C. § 5–219(4), has set the policy and this Court should not ignore it." *Blake v. Cruz,* 108 Idaho at 270–71, 698 P.2d at 332–33 (Bakes, J., dissenting). Our prior decision in *Morton v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978), regarding attorney malpractice, is inconsistent with today's decision and is obviously impliedly overruled by today's decision.