672 P.2d 1049

**Dianna B. WORDEN, Plaintiff-Appellant,**

v.

**Joseph ORDWAY,**
**Defendant-Respondent.**

**No. 14579.**

Supreme Court of Idaho.

Oct. 24, 1983.

Jonathan Ellison, Idaho Legal Aid Services, Inc., Lewiston, for plaintiff-appellant.

No appearance by defendant-respondent.

BAKES, Justice.

This is an appeal from the dismissal of Counts 1 and 3 of plaintiff's complaint. The dismissal was granted at the end of the trial, but prior to submission of the balance of the issues raised by plaintiff's complaint to the jury, which returned a verdict against plaintiff. Viewing the evidence most favorably to the appellant on those two dismissed counts, as we must, *Pigg v. Brockman*, 85 Idaho 492, 381 P.2d 286 (1963), the evidence before the trial court is reasonably susceptible to the following interpretation.

Appellant moved to Lewiston from Oregon in March, 1977. After failing to find a suitable dwelling for herself and her three children, she rented a unit at the Green Gables Motel from respondent. After one night, appellant and respondent agreed that appellant would rent the unit on a monthly basis for $120 per month. The unit consist-ed of one room, with a kitchenette and bathroom. However, because the heating unit in this room did not work properly, appellant soon moved to a larger unit, renting for $160 per month. The larger unit consisted of a living room, bedroom, kitchenette and bath. Shortly after moving into the larger unit, the kitchen sink failed to drain properly. Appellant allegedly notified respondent of this problem, but he failed to fix it. Later, the plumbing in the bathroom failed. Appellant testified that when the toilet was flushed, it would back up into the shower. Also, when someone was in the shower, it would not drain and thus would constantly overflow. This condition resulted in a continually damp, smelly and musty atmosphere in the apartment. These conditions were never repaired, even though respondent was allegedly given oral notice of the defects.

In November of 1977, the hot water in appellant's apartment failed completely. She had no hot water at all until approximately four months later, in February, 1978, when, due to repairs made by appellant's boyfriend, partial hot water capacity was restored. The hot water capacity was never fully restored before appellant vacated the premises. Appellant notified respondent of this problem, and he allegedly promised to fix it. In the meantime, appellant and her three children walked across the parking lot to another unit to use the shower.

During her tenancy, appellant was also bothered by the presence of rats, mice, and roaches (woodbores, as appellant referred to them).

At the end of April, 1978, appellant apparently began to vacate the premises. She had previously withheld rent payments for March and April in an attempt to force respondent to make repairs. While appellant was in the process of moving out (but apparently before appellant had the chance to remove all of her belongings), respondent locked up the premises and refused to allow appellant to remove the remainder of her belongings.

On May 3, 1978, appellant's counsel sent a letter to respondent, giving him the three day notice required under I.C. § 6–320. Appellant then filed suit on May 17, 1978. Appellant alleged several causes of action against respondent, including (1) breach of an implied warranty of habitability, (2) intentional infliction of emotional distress, (3) violation of I.C. § 6–320, (4) violation of the Uniform Housing Code, (5) negligence *per se*, (6) constructive eviction, (7) breach of the covenant of quiet enjoyment, (8) nuisance, and (9) return of property held by respondent after the supposed lockout. Respondent counterclaimed for the balance of the rent claimed due and for damages, asserting that plaintiff's living habits caused the damage to the plumbing, which in turn overflowed and damaged respondent's property.

A jury trial was held before a magistrate. However, before submitting the case to the jury, the magistrate removed from the jury's consideration the causes of action numbered (1) and (3) above. The jury then returned a verdict awarding no damages to either side. The major issues appellant raises on appeal are whether the magistrate erred in directing verdicts on causes (1) and (3). The magistrate, on Count 1, ruled that Idaho has not yet recognized the implied warranty of habitability, and he did not "choose . . . to plow a new ground in this particular case." On Count 3, the magistrate ruled that appellant had not sufficiently complied with the notice requirement under the statute in that the appellant had already partially vacated the apartment when the notice was given. Since the statute itself requires the notice as a prerequisite to standing, the magistrate felt that a person who had terminated the tenancy should not be able to maintain standing to sue for damages under the act; thus, verdicts were directed under Counts 1 and 3. Appellant appealed to the district court, and the district court issued an order affirming, without opinion, the decision of the magistrate. On appeal, appellant asks that we overturn the magistrate's decision granting a directed verdict. We will first consider the directed verdict on Count 3.

I

The trial court's action in removing Count 3 from the jury's consideration, although termed a motion to dismiss, was essentially a directed verdict. *Blackburn v. Boise School Bus Co.,* 95 Idaho 323, 508 P.2d 553 (1973); *Bauscher Grain v. National Surety Corp.,* 92 Idaho 229, 440 P.2d 349 (1968); *Van Vranken v. Fence-Craft,* 91 Idaho 742, 430 P.2d 488 (1967). A motion for directed verdict admits the truth of the adversary's evidence and every inference of fact which may legitimately be drawn therefrom. *Smith v. Big Lost River Irr. Dist.,* 83 Idaho 374, 364 P.2d 146 (1961). Moreover, the evidence must be considered in a light most favorable to the party against whom the motion has been made. *Pigg v. Brockman,* 85 Idaho 492, 381 P.2d 286 (1963). A trial court should direct a verdict only if, as a matter of law, the plaintiff would not recover under any reasonable view of the facts. *Smith v. Big Lost River Irr. Dist., supra.*

I.C. § 6–320, upon which Count 3 is based, is a statutory version of the implied warranty of habitability. Under that section, a landlord can be liable for damages for failure to keep the premises in good repair, or for any other breach of the lease or rental agreement which materially affects the health and safety of the tenant. To maintain an action on this section, the tenant must show that the landlord failed to do one of five things.

(1) Failure to provide waterproofing and weather protection.

(2) Failure to maintain in good working order electrical, plumbing, heating, ventilating, cooling or sanitary facilities.

(3) Maintaining the premises in a manner hazardous to the health or safety of the tenant.

(4) Failure to return a security deposit as and when required by law.

(5) Breach of any term or provision of the lease or rental agreement materi-

ally affecting the health and safety of the tenant.

The statute itself also provides that certain procedural steps must be taken. The procedural requirement under I.C. § 6–320 that we are concerned with here is the requirement that the tenant give the landlord three days' written notice requiring him to cure the defects before suit may be filed. The question in this case is essentially whether the tenant here complied with this provision.

There is no question that appellant did give respondent a written notice of the defects she felt violated I.C. § 6–320. · The only question is whether the timing of the notice was sufficient. I.C. § 6–320(d) requires a three day notice, but does not indicate the status of the tenant at the time the notice is given. The trial judge evidently felt that since the tenant here was no longer physically living at the motel at the time she gave the notice, I.C. § 6–320 was not applicable.

Two questions are presented by appellant's claim that the trial court erred in dismissing Count 3 of her complaint. The first is whether or not a tenant, who is no longer in physical possession of the premises may nevertheless still maintain an action against the landlord under I.C. § 6–320, after first giving the landlord the three days' notice required by that section. The second issue is whether or not, viewing the evidence most favorably toward the appellant, there was a material issue of fact concerning whether or not the appellant was still in possession of the premises at the time she gave the landlord the three days' notice under the statute.

### A.

■ A reading of the statute discloses that there are some statutory violations on the part of the landlord that can occur irrespective of possession by the tenant. Under I.C. § 6–320(a)(3), the tenant is allowed to sue for damages if the landlord has failed to return a security deposit in the time required under I.C. § 6–321. Additionally, I.C. § 6–320(a)(5) allows a suit for damages for breach of the terms of the lease. In Idaho there is an implied covenant in every lease for quiet enjoyment of the property. *McCullough v. Cuthbert,* 46 Idaho 294, 267 P. 828 (1928). Thus, if a landlord substantially interferes with a tenant's use and enjoyment of the premises he has breached this covenant. Where a landlord wrongfully locks a tenant out of the premises, such as is alleged to have occurred in this case, a tenant would be entitled to bring an action under I.C. § 6–320(a)(5) for breach of the covenant of quiet enjoyment, after first giving the three days' notice required by I.C. § 6–320(d), even though the tenant would have lost actual physical possession of the premises. Accordingly, we conclude that a tenant's right to sue under I.C. § 6–320 is not invariably precluded because at the time the three days' notice was given the tenant was no longer in physical possession, at least as the complaint refers to those claims referred to above.

### B.

■ Furthermore, there is a disputed issue of fact in this case regarding whether the tenant actually had voluntarily vacated the premises at the time the notice was given or whether she was still in possession of the premises. The trial court, in ruling on the motion for a directed verdict, made the following comments:

"I read the notice that was sent after the tenant had in fact moved out of the premises or had been locked out of the premises ... of course that lock out occurred after the tenant had partially moved out."

Viewing the record most favorably to the appellant, a material issue of fact existed on the question of whether or not the tenant had in fact moved out of the premises. Accordingly, the trial court erred in directing a verdict on Count 3.

### II

The trial court also directed a verdict on Count 1 of appellant's complaint. That count alleged an implied warranty of habit-

ability. The trial court directed the verdict asserting that Idaho has never recognized a cause of action on such an implied warranty. Idaho common law did not imply a covenant to repair leased premises. A landlord could be forced to repair leased premises only if the lease agreement required him to do so. *Duthie v. Haas,* 71 Idaho 368, 232 P.2d 971 (1951); *Brauner v. Snell,* 35 Idaho 243, 205 P. 558 (1922); *Russell v. Little,* 22 Idaho 429, 126 P. 529 (1912).

■ In recent years, however, some courts faced with such a common law rule have abandoned that rule where residential housing is concerned and, by judicial decision, imposed an implied obligation on the part of the landlord to keep the premises in a habitable state of repair. The Idaho legislature has already acted in this area and enacted a statutory version of the implied warranty of habitability theory. I.C. § 6–320. This Court should refrain from changing or expanding a common law rule, where the legislature has already acted in the same area. As noted by a Colorado court in rejecting the implied warranty theory in deference to legislative action,

> "We recognize that the rule of *caveat emptor* was developed under social and economic conditions which no longer prevail in many areas of the United States. But the implied warranty of habitability theory involves many economic and social complexities, and we believe its adoption should be preceded by the research and study of which the legislature is more capable. Embracing the theory might, for example, cause landlords to significantly raise rents in order to make the required repairs, or induce them to abandon already run-down premises, leaving some poor people without any place, good or bad, in which to live. Indeed, in the present case, respondent preferred to evict the petitioner rather than invest great sums in repairs.
>
> "We note, further, that the courts which have adopted the implied warranty remedy have not expressed agreement on what form it is to take—by what standards breach of warranty is to be meas-

ured, whether it may be waived or disclaimed, or what measure of damages should be available to the aggrieved tenant. These considerations, the formulation of which will vastly affect the rental industry, in our view, lie within the legislative competence of the General Assembly." *Blackwell v. Del Bosco,* 191 Colo. 344, 558 P.2d 563, 565–56 (Colo.1976).

■ Thus, the Colorado Supreme Court refused to adopt a common law implied warranty of habitability, deferring to the state legislature, even though the Colorado legislature had not taken any action. However, in Idaho the legislature has already acted, and therefore the reasoning set out by the Colorado Supreme Court is even more compelling and we should decline to expand the common law where the legislature has already acted, creating a statutory obligation upon landlords.

Accordingly, we affirm the trial court's action in directing a verdict on the first cause of action in appellant's complaint, reverse the directed verdict on the third cause of action, and remand for further proceedings.

Costs to appellant.

SHEPARD, J., concurs.

DONALDSON, Chief Justice, specially concurring.

The majority has chosen to reach the merits of this case and I do not disagree with Justice Bakes' analysis and holding. However, I feel that the Court lacks jurisdiction unless it chooses to exercise its plenary jurisdiction under Article 5, section 9 of the Idaho Constitution.

The plaintiff-appellant tenant brought an action against the defendant-respondent landlord which was tried in the magistrate division. A verdict was returned in favor of the defendant. Although no judgment or order entered by the magistrate appears in the appellate record, the district court entertained an appeal and affirmed the magistrate with respect to errors assigned by the appellant. Thus, without a final judgment or order of the magistrate, no

**724**

appeal exists in the district court, I.R.C.P. 83(a), or ultimately to this Court. I.A.R. 11(a)(1). *See State v. Mason,* 102 Idaho 866, 643 P.2d 78 (1982). Nevertheless, in order to arrive at a majority opinion, I concur in the result of Justice Bakes' opinion.

HUNTLEY, Justice, concurring in part and dissenting in part.

I concur in part I of the plurality opinion wherein we reverse the trial court for error in directing a verdict for defendant on Count III of the complaint.

However, I must respectfully dissent from Part II of the opinion wherein the plurality refuses to acknowledge a common law implied warranty of habitability.

Mrs. Worden, on behalf of herself and her three children, paid Mr. Ordway a monthly rental for a suitable abode—he took her money and provided her with a kitchen sink which would not drain, failed bathroom plumbing which he would not fix, a toilet which backed up into the shower, four months of no hot water, and further provided her with rats, mice and roaches.

It is clear Mrs. Worden did not receive that which Mr. Ordway promised to provide her—habitable premises. Accordingly she has a cause of action aside from that provided by statute.

The reasoning of the majority is that the court will not recognize a common law right in an area of law where the legislature has acted to some extent. No authority is provided for the proposition that common law rights are repealed by inference or implication.

Suppose the next legislature, without statement of reason, repeals I.C. § 6–320. Would the plurality then recognize the common law right since there would be a void of legislation?

I would hold that where the legislature does not specifically repeal a common-law right, and where the right is not incompatible with the legislative enactment, that the common-law right continues to exist.

BISTLINE, J., concurs.