233 P.3d 1

Yvonne JESSE, Plaintiff–Appellant,

v.

Ted LINDSLEY, Defendant–Respondent.

No. 34037.

Supreme Court of Idaho,
Boise, March 2008 Term.

June 6, 2008.

Rehearing Denied July 22, 2008.

72

Clark & Feeney, Lewiston, for appellant. Paul T. Clark argued.

Clements, Brown & McNichols, P.A., Lewiston, for respondent. Bentley G. Stromberg argued.

J. JONES, Justice.

While walking in the rain to another apartment in her complex, Yvonne Jesse decided to walk in the planting area in order to avoid a considerable amount of water covering the driveway. As she was walking, Jesse stepped in a sinkhole and fell, sustaining multiple injuries. Jesse sued her landlord, Ted Lindsley, for failing to maintain the premises in a safe condition. Lindsley moved for summary judgment, alleging that an exculpatory clause in the lease absolved him from liability for Jesse's injuries. The district court agreed and granted summary judgment in favor of Lindsley. Jesse appealed to this Court. We vacate the summary judgment and remand for further proceedings.

### I.

The facts of this case are largely undisputed. Ted Lindsley owns Vista Valley Apartments in Grangeville, Idaho. Yvonne Jesse rented an apartment from Lindsley in 2000. The apartment lease contains an exculpatory clause, which provides:

> That the owner shall not be liable for damages due to either injuries or accidents caused by slipping, falling or from any other sources that occur either in the apartment building, the outside area of the apartment building, or on the outside premises of the lot or land, paving or sidewalks where the apartment building is located or from any act of God that either directly or indirectly may cause bodily harm of any nature.

On May 8, 2005, Jesse injured herself when she fell in a sinkhole while walking in the planting area adjacent to her mother's apartment, which was in the same complex. It was raining heavily, and Jesse walked in the planting area beside the driveway in order to avoid a "considerable amount" of water which ran down the driveway.[1] Jesse had previous-

---

1. According to her deposition, the water in the driveway would have been over her shoes. In addition, Jesse testified in her deposition that she fell in the hole on the way to her mother's apartment, which was downstairs. The Complaint alleges she was on her way to her car.

ly walked in the planting area when it was raining, and had informed Lindsley about the hole there several times.

Jesse sued Lindsley on a negligence theory, alleging he should have known the sinkhole was a dangerous condition that presented an unreasonable risk to tenants and that he should have remedied this prior to her fall. Lindsley moved for summary judgment on the grounds that the exculpatory clause relieved him from all liability. The district court granted summary judgment for Lindsley on that basis, stating:

> Today in Idaho a landlord is strictly liable for breaches of the statutory warranty of habitability [under I.C. § 6–320] and he must exercise due care regarding all other aspects of the rented or leased premises. Competing with those fairly straight-forward notions is the right of Idahoans to contract away their duties and liability for their own negligence.

Jesse appealed to this Court, contending she was entitled to pursue a claim under I.C. § 6–320 and that, in any event, the exculpatory clause was against public policy and unenforceable.

## II.

In this case, we address (1) whether Jesse can bring a claim under I.C. § 6–320 and (2) whether an exculpatory clause purporting to absolve a landlord from liability for accidental injuries sustained by the tenant is in contravention of public policy and unenforceable.

## A.

### Standard of Review

 On appeal from the grant of a motion for summary judgment, this Court applies the same standard used by the district court originally ruling on the motion. *Carnell v. Barker Mgmt., Inc.,* 137 Idaho 322, 326, 48 P.3d 651, 655 (2002). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 326–27, 48 P.3d at 655–56 (citing Idaho R. Civ. P. 56(c)). All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party. *Id.* at 327, 48 P.3d at 656. If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review. *Infanger v. City of Salmon,* 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002). The parties do not dispute the pertinent facts here, so we are presented with questions of law.

## B.

### Jesse May Not Invoke I.C. § 6–320

Jesse contends Lindsley violated I.C. § 6–320, Idaho's statutory version of the implied warranty of habitability.[2] *Silver Creek Computers v. Petra, Inc.,* 136 Idaho 879, 882, 42 P.3d 672, 675 (2002). The statute reads, in part pertinent here, "A tenant may file an action against a landlord for damages and specific performance for ... [m]aintaining the premises in a manner hazardous to the health or safety of the tenant ..." I.C. § 6–320(a)(3). The district court found that Jesse's alleged fall was not within I.C. § 6–320 because the planting area was not intended to be a means of access to her apartment. Jesse alleges the district court erred because it failed to recognize that Jesse was "compelled" to walk in the planting area due to the heavy rain and water that had accumulated on the driveway. In addition, Jesse told Lindsley about the sinkhole numerous times. Since Lindsley knew prior to this accident that Jesse had to walk across the planting area because of excessive water, and failed to fix the sinkhole, she contends Lindsley maintained the premises in a hazardous condition, under I.C. § 6–320. Lindsley ar-

**2.** On appeal, Lindsley argues I.C. § 6–320 has no application because Plaintiff based her complaint solely on a theory of common law negligence. In response, Jesse contends the parties and the court have treated her claim as a violation of I.C. § 6–320 and/or a negligence claim throughout the proceedings. The district court did address the statutory claim in its decision and we, thus, do likewise.

gues I.C. § 6–320 is not applicable here because the defect Jesse complains of did not prevent her from using the dwelling for its intended purpose of habitation, citing to cases applying the common law warranty of habitability.

I.C. § 6–320 is a strict liability statute. *Silver Creek Computers,* 136 Idaho at 883, 42 P.3d at 676. A tenant need not prove negligence to obtain relief under I.C. § 6–320. *Id.* Thus, Jesse could pursue her claim under this statute, even without proving Lindsley was negligent in failing to repair the sinkhole. However, I.C. § 6–320(d) expressly provides: "Before a tenant shall have standing to file an action under this section, he must give his landlord three (3) days written notice, listing each failure or breach upon which his action will be premised and written demand requiring performance or cure." Although Jesse did inform Lindsley of the defective condition a number of times, there is no allegation of her having given written notice. Thus, Jesse lacks standing to bring a claim under the statute.

### C.

### The Exculpatory Clause Is Overly Broad and Unenforceable

The district court found the planting area was not within the scope of the statutory warranty of habitability because the landlord did not intend that area to be a means of access to the apartment. In addition, the lease provision specifically negated liability for any personal injury that occurred on the premises. Given the expanse of the exculpatory language and the finding that the planting area was beyond the ambit of the habitability covenant, the district court concluded Lindsley successfully immunized himself from liability.

Jesse contends the district court erred when it held the exculpatory clause was enforceable because the clause violates public policy. To support this contention, Jesse relies on a landlord's common law duty to exercise reasonable care in light of all the circumstances and I.C. § 6–320. Jesse claims the clause in the rental agreement violates Idaho's public policy by eliminating

the landlord's duty to exercise reasonable care. As such, the clause should not be enforced. Lindsley contends that the clause is enforceable because parties are free to contract with one another, as they did here in agreeing to the clause. Further, he contends the accident at issue here would not fall within I.C. § 6–320, and that there is no legitimate argument that public policy gives tenants greater protection than the Legislature codified.

Before considering these arguments, it would be well to consider the duty a landlord owes to a residential tenant, including the role of Section 6–320. This Court initially discussed that section in *Worden v. Ordway,* 105 Idaho 719, 672 P.2d 1049 (1983), a case involving a landlord's obligation to repair leased premises. There, the Court declined to adopt a common law implied warranty of habitability, based on the Legislature's enactment of Section 6–320. *Id.* at 723, 672 P.2d at 1053. In declining to adopt a rule requiring landlords to keep residential premises in a habitable state of repair, the Court stated:

> The Idaho legislature has already acted in this area and enacted a statutory version of the implied warranty of habitability theory. I.C. § 6–320. This Court should refrain from changing or expanding a common law rule, where the legislature has already acted in the same area.

*Id.* The Court reiterated that Section 6–320 constituted a statutory version of the implied warranty of habitability in *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984). There, the Court considered the landlord's duty where a tenant was injured when falling in a stairway that provided access to her apartment. The Court noted that under the common law, a landlord was generally not liable to the tenant for any damage resulting from dangerous conditions existing at the time of the leasing. *Id.* at 257, 678 P.2d at 49. However, the Court stated, "[W]e today decide to leave the common-law rule and its exceptions behind, and we adopt the rule that a landlord is under a duty to exercise reasonable care in light of all the circumstances." *Id.* at 258, 678 P.2d at 50. This holding was footnoted: "Our embracement of this rule is further supported by our legislature's enact-

ment of a statutory version of the implied warranty of habitability, I.C. § 6–320." *Id.*, at 258 n. 3, 678 P.2d at 50 n. 3. (*citing Worden*, 105 Idaho at 719, 672 P.2d at 1049).

The Court again visited the issue in *Stevens v. Fleming*, 116 Idaho 523, 777 P.2d 1196 (1989), wherein the surviving daughters of a deceased residential tenant were seeking damages from the landlord for their decedent's death in an apartment fire. The Court stated:

> A landlord is required to exercise reasonable care to his tenants in light of all the circumstances. *Stephens v. Stearns* ... In adopting the reasonable care standard for landlords in *Stearns* ... the Idaho Supreme Court noted by way of footnote that its holding was supported by a statutory version of the implied warranty of habitability, I.C. § 6–320. When applicable, specific statutory provisions such as the Uniform Fire Code may prove useful in delineating minimum standards which are binding upon every owner of a rented premises. Such on point code provisions provide a ready measure of the base standard of care and failure to meet such standards may be negligence *per se* if the statutes or ordinances were designed to prevent the type of harm which occurred.

*Id.* at 525–26, 777 P.2d at 1198–99.

Thus, the rule is that a landlord must exercise reasonable care under the circumstances for the protection of his residential tenant. This includes the duty under I.C. § 6–320 to maintain the premises in a manner that is not hazardous to the health or safety of the tenant. We now turn to the application of the exculpatory clause.

Freedom of contract is a fundamental concept underlying the law of contracts. *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho 496, 499, 465 P.2d 107, 110 (1970). A contracting party may absolve himself from certain duties and liabilities under the contract, subject to certain limitations. *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 178, 595 P.2d 709, 712 (1979).

However, courts look with disfavor on such attempts to avoid liability and construe such provisions strictly against the person relying on them, especially when that person is the preparer of the document. *Id.* Clauses which exclude liability must speak clearly and directly to the particular conduct of the defendant which caused the harm at issue. *Id.* In this case, Lindsley, the landlord, drafted the exculpatory clause. This Court will thus construe the clause strictly against Lindsley, and the clause must speak clearly and directly to the conduct to be immunized from liability.

The general rule sustaining agreements exempting a party from liability for negligence is subject to two exceptions: "(1) one party is at an obvious disadvantage in bargaining power; or (2) a public duty is involved (public utility companies, common carriers)."[3] *Lee v. Sun Valley Co.*, 107 Idaho 976, 978, 695 P.2d 361, 363 (1984) (quoting *Rawlings*, 93 Idaho at 499–500, 465 P.2d at 110–11). "Unless in circumstances affronting public policy, it is no part of the business of the courts to decline to give effect to contracts which parties have freely and deliberately made." *United States ex rel. and for Benefit of Admin'r of Fed. Housing Admin. v. Troy–Parisian, Inc.*, 115 F.2d 224, 226 (9th Cir.1940), *quoted in Rawlings*, 93 Idaho at 500, 465 P.2d at 111. In *Lee*, the Court named utilities and common carriers as obvious examples of parties owing a public duty, but we also noted there may be others who owe a public duty in Idaho. *Lee*, 107 Idaho at 978, 695 P.2d at 363. "The idea of a public duty is closely related to the idea of public policy and it is within the domain of the legislature, elected by the public, to determine such duties and policies." *Id.* Whether a contract violates public policy is a question of law for the court to determine from all the facts and circumstances of each case. *Bakker v. Thunder Spring–Wareham, LLC*, 141 Idaho 185, 189, 108 P.3d 332, 336 (2005). "Public policy may be found and set forth in the statutes, judicial decisions or the constitution." *Id.*

**3.** Jesse does not claim she had any disadvantage in bargaining power, but argues that the second exception applies on the theory that the statutory warranty of habitability creates a duty for Lindsley to maintain the premises in a safe condition.

■ The first question is whether I.C. § 6–320(a)(3), requiring landlords to maintain leased premises in a non-hazardous condition, states a public policy of the State of Idaho. Section 6–320(a)(3) provides that a tenant may file an action against a landlord for damages and specific performance for maintaining the premises in a manner hazardous to the health or safety of the tenant. I.C. § 6–320 is a strict liability provision that is primarily directed toward giving the tenant leverage to require the landlord to keep the premises in good order. As such, it establishes a public policy that a landlord must maintain premises in a manner that is not hazardous to the health or safety of the tenant. This Court relied upon I.C. § 6–320(a)(3) when it adopted the rule that a landlord is under a duty to exercise reasonable care in light of all the circumstances. *See Worden,* 105 Idaho at 723, 672 P.2d at 1053; *Stearns,* 106 Idaho at 258, 678 P.2d at 50; *Fleming,* 116 Idaho at 525–26, 777 P.2d at 1198–99. In essence, this Court concluded that the Legislature established a policy for landlords to provide safe habitation for their tenants, separate and apart from the issue of whether one may recover under the specific provisions of I.C. § 6–320. Certainly, it would not be the public policy of the state to allow landlords to provide hazardous and unsafe premises to their tenants.

■ The next question is the extent of the public policy coverage. *Bakker* tells us that a declaration of public policy in a statute is to be targeted to the specific problem addressed by the Legislature and an expression of public policy in a statutory provision does not necessarily extend to the entire code chapter in which the expression is contained. *Bakker,* 141 Idaho at 189–90, 108 P.3d at 336–37. Looking at Section 6–320(a)(3) in context, the provision states that the "premises" are to be maintained in a non-hazardous condition, which necessarily means the leased premises. That is, the landlord is obligated to maintain the premises covered by the lease in a non-hazardous condition. In this case, that would include the apartment and common areas, i.e. the parking space (included in the lease), driveway, sidewalks, halls, and stairways providing access to Jesse's apartment. However, there is nothing in the lease providing Jesse any ability to access the planting area or any other areas not included in the premises leased. Nor is there a public policy dictating that areas not necessary for habitation by the tenant should be subject to a specific requirement of maintaining the same in a safe condition.

■ The remaining question is whether the exculpatory clause is enforceable as written. The clause reads:

That the owner shall not be liable for damages due to either injuries or accidents caused by slipping, falling or from any other sources that occur either in the apartment building, the outside area of the apartment building, or on the outside premises of the lot or land, paving or sidewalks where the apartment building is located or from any act of God that either directly or indirectly may cause bodily harm of any nature.

The clause purports to relieve Lindsley from liability for injuries or accidents caused by slipping and falling, as occurred here, or "from any other sources." Further, it purports to absolve him from liability for such injuries that might occur either in the apartment building or outside the building, but still on the premises. In short, the clause attempts to relieve the landlord of liability for any type of injury, wherever it may occur. The clause is too broad and does not speak clearly and directly to the particular conduct of the defendant intended to be immunized. *See Anderson & Nafziger,* 100 Idaho at 178, 595 P.2d at 712. While it might be reasonable to absolve the landlord for injuries or accidents caused by slipping or falling in the apartment building, in the outside of the apartment building, or on the outside premises of the lot or land, pavements or sidewalks (where the same were not maintained in a hazardous condition), or to exempt the landlord from liability for acts of God, the exemption of liability from accidents or injuries "from any other sources" is simply too broad.

While we have not considered the question of the enforceability of an overbroad exculpatory clause, we have considered the issue of

enforceability of an overbroad contract provision in another area where a contractual provision is disfavored and strictly construed—covenants not to compete in contracts of employment. *See Freiburger v. J–U–B Engineers, Inc.*, 141 Idaho 415, 420, 111 P.3d 100, 105 (2005). A covenant not to compete is reasonable and enforceable only if the covenant "(1) is not greater than necessary to protect the employer in some legitimate business interest; (2) is not unduly harsh or oppressive to the employee; and (3) is not injurious to the public." *Id.* Applying the same principle here, it appears that the language absolving Lindsley of any liability for any occurrence anywhere on his property is simply too broad. Although he may have some legitimate interest in relieving himself from slip and fall injuries in areas not part of the tenant's leased premises or from acts of God, to release himself from liability for any occurrence of any nature simply goes too far. Thus, the all-encompassing clause is simply too broad and unenforceable.

## D.

### The Jury Must Decide Whether Lindsley Exercised Reasonable Care

 Jesse sued Lindsley on a negligence theory, alleging he should have known the sinkhole was a dangerous condition that presented an unreasonable risk to tenants, which he should have remedied prior to Jesse's fall.[4] Jesse also noted that she informed Lindsley of the problem with the sinkhole several times, and that she had been forced to walk in the planting area previously due to the rain in the driveway. This Court follows the modern trend that a landlord is under a duty to exercise reasonable care in light of all the circumstances. *Stearns*, 106 Idaho at 258, 678 P.2d at 50. Once the plaintiff establishes such a duty owed to the

tenant, it is for a jury to decide whether the duty has been breached. *See Id.* Since the exculpatory clause in the rental agreement is not enforceable, Lindsley continues to owe a duty to his tenants to exercise reasonable care in light of all the circumstances. A jury must decide whether he exercised such care in this case. The district court erred when it granted summary judgment to Lindsley on this claim.

## III.

We vacate the district court's summary judgment and remand the case for further proceedings consistent with this opinion.

Justices BURDICK and Pro Tem TROUT concur.

Chief Justice EISMANN, dissenting.

Because the majority has violated the Idaho Constitution by usurping the power of the legislature, I respectfully dissent.

The issue in this case is simply whether an exculpatory clause in a lease is valid. In *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho 496, 499–500, 465 P.2d 107, 110–111 (1970), we held that "express agreements exempting one of the parties for negligence are to be sustained except where: (1) one party is at an obvious disadvantage in bargaining power; [or] (2) a public duty is involved (public utility companies, common carriers)." There is no contention in this case that Jesse was at an obvious disadvantage in bargaining power. Thus, the validity of the exculpatory clause hinges upon whether a public duty was involved.

In *Lee v. Sun Valley Co.*, 107 Idaho 976, 695 P.2d 361 (1984), we addressed the issue of the existence of a public duty where the legislature had acted to regulate tort liability

---

4. Lindsley argues this clause should not be invalidated because the accident at issue here occurred on a portion of the premises where the landlord would not anticipate a tenant walking. Therefore, it is outside the scope of the duty to exercise reasonable care. This argument is unavailing for two reasons. First, we must look at this clause as a whole to determine its validity. We do not possess the power to rewrite the clause to avoid voidability. *See, e.g., Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 362, 93 P.3d 685, 693 (2004) (quoting *Smith v. Idaho State Univ. Fed. Credit Union*, 114 Idaho 680, 684, 760 P.2d 19, 23 (1988)) ("Courts do not possess the roving power to rewrite contracts in order to make them more equitable."). Second, there is evidence in this record to support Jesse's claim that she advised Lindsley of the problem on a number of occasions and he took no action. Therefore, he had reason to know she used the route in question, which makes the garden area part of the premises for this purpose.

between two groups. In *Lee,* the plaintiff was injured while on a horseback ride conducted by a guide licensed by the Idaho Outfitters & Guides Board. Prior to going on the horseback ride, the plaintiff had signed an agreement holding the guide and his employer harmless for any injury he may incur. We held that

> where the legislature has addressed the rights and duties pertaining to personal injuries arising out of the relationship between two groups, i.e., employers/employees, outfitters and guides/participants, and has granted limited liability to one group in exchange for adherence to specific duties, then such duties become a "public duty" within the exception to the general rule validating exculpatory contracts. Therefore, while the agreement between Sun Valley and plaintiff does absolve Sun Valley from common law liabilities, it does not absolve Sun Valley from liability for possible violation of the public duty imposed by I.C. § 6–1204.

107 Idaho at 979, 695 P.2d at 364.

Under *Lee,* the existence of a public duty was based upon the fact that "the legislature has addressed the rights and duties pertaining to personal injuries arising out of the relationship between two groups." *Id.* In that circumstance, the exculpatory clause absolved the party from "common law liabilities," but it did not absolve the party from "the public duty imposed by [statute]."

In this case, the legislature *has not* addressed the rights and duties pertaining to personal injuries arising out of the relationship between landlord and tenant. The legislature has enacted Idaho Code § 6–320, which is "a statutory version of the implied warranty of habitability theory," *Worden v. Ordway,* 105 Idaho 719, 723, 672 P.2d 1049, 1053 (1983). "As such, the provisions of the statute are part of the lease, and the damages recoverable under the statute are those recoverable for *breach of contract." Silver Creek Computers, Inc. v. Petra, Inc.,* 136 Idaho 879, 884, 42 P.3d 672, 677 (2002) (emphasis added). Idaho Code § 6–320 imposes contractual rights and duties between landlords and tenants, it does not address their rights and duties pertaining to personal injuries.

For example, the statutes in *Lee* included a statement that it was the legislative purpose to "define those areas of responsibility and affirmative acts for which outfitters and guides shall be liable for loss, damage, or injury, and to define those risks which the participant expressly assumes and for which there can be no recovery."[5] The statutes set forth the duties of an outfitter,[6] the duties of a guide,[7] the duties of a participant,[8] and the

---

5. Idaho Code § 6–1201 provides:

> 6–1201. LEGISLATIVE PURPOSE. Every year, in rapidly increasing numbers, the inhabitants of the state of Idaho and nonresidents are enjoying the recreational value of Idaho's mountains, rivers, and streams, many of which are remote and far removed for ordinary auto travel. The tourist trade is of vital importance to the state of Idaho, and the services offered by licensed outfitters and guides significantly contribute to the economy of the state of Idaho. The legislature recognizes that there are inherent risks in the recreational activities provided by outfitters which should be understood by each participant. These risks are essentially impossible to eliminate by outfitters and guides. It is the purpose of this chapter to define those areas of responsibility and affirmative acts for which outfitters and guides shall be liable for loss, damage, or injury, and to define those risks which the participant expressly assumes and for which there can be no recovery.

6. Idaho Code § 6–1203 provides:

> 6–1203. DUTIES OF AN OUTFITTER. All outfitters offering professional services in this state shall provide facilities, equipment, and services as advertised or as agreed upon between the outfitter and the participant. All services, facilities, and equipment provided by outfitters in this state shall conform to safety and other requirements set forth in chapter 21, title 36, Idaho Code, and by the rules promulgated by the Idaho outfitters and guides board created by chapter 21, title 36, Idaho Code.

7. Idaho Code § 6–1204 provides:

> 6–1204. DUTIES OF A GUIDE. Any guide providing personal services for an outfitter in this state shall conform to the standard of care expected of members of his profession and he shall comply with all duties and requirements placed on him by chapter 21, title 36, Idaho Code, and by the rules promulgated by the Idaho outfitters and guides board created by chapter 21, title 36, Idaho Code.

8. Idaho Code § 6–1205 provides:

> 6–1205. DUTIES OF PARTICIPANTS. It is recognized that some recreational activities

liability of outfitters and guides.[9] There are no comparable provisions in Idaho Code § 6–320. It does not purport to address the tort liability of landlords. If Section 6–320 regulated the tort liability of landlords, then we would not have held in *Stephens v. Stearns*, 106 Idaho 249, 258, 678 P.2d 41, 50 (1984), that "we adopt the rule that a landlord is under a duty to exercise reasonable care in light of all the circumstances." We would simply have held that any recovery for personal injuries must be brought under Section 6–320.

Even if Idaho Code § 6–320 did constitute "a public duty imposed by statute" under our decision in *Lee*, then Jesse's remedy is the remedy provided by that statute. That was our holding in *Lee*. As we stated, "Therefore, while the agreement between Sun Valley and plaintiff does absolve Sun Valley from common law liabilities, it does not absolve Sun Valley from liability for possible violation of the public duty imposed by I.C. § 6–1204." 107 Idaho at 979, 695 P.2d at 364. Jesse's recourse in this case would simply be to recover under the provisions of Idaho Code § 6–320. Subsection (d) of the statute provides:

Before a tenant shall have standing to file an action under this section, he must give his landlord three (3) days written notice, listing each failure or breach upon which his action will be premised and written demand requiring performance or cure. If, within three (3) days after service of the notice, any listed failure or breach has not been performed or cured by the landlord, the tenant may proceed to commence an action for damages and specific performance.

A tenant who believes there is an unsafe condition on the leased premises must give the landlord three days written notice to cure. If the landlord does not do so, the tenant has two options: (a) the tenant can bring an action for specific performance to obtain a court order requiring the landlord to cure the problem, or (b) the tenant can cure the problem and bring an action seeking to recover damages for the cost of doing so. Jesse did not seek either of those remedies in this case.

In *Worden v. Ordway*, 105 Idaho 719, 723, 672 P.2d 1049, 1053 (1983), this Court said it "should refrain from changing or expanding a common law rule, where the legislature has

conducted by outfitters and guides are hazardous to participants regardless of all feasible safety measures which can be taken. Participants shall have a duty to act as would a reasonably prudent man when engaging in recreational activities offered by licensed outfitters and guides in this state. Participants shall have a duty not to:

(a) Do any act which shall interfere with the running or operation of an outfitter's or guide's activities, when such activities conform to the rules of the Idaho outfitters and guides board and to the requirements of chapter 21, title 36, Idaho Code;

(b) Use any outfitter's or guide's equipment or facilities or services if the participant does not have the ability to use such facilities or equipment or services safely without instructions until the participant has requested and received sufficient instruction to permit safe usage;

(c) Engage in any harmful conduct, or willfully or negligently engage in any type of conduct which contributes to or causes injury to any person;

(d) Embark on any self-initiated activity without first informing the outfitter or guide of his intentions and receiving permission from the outfitter or guide to engage in such self-initiated activity.

9. Idaho Code § 6–1206 provides:

6–1206. LIABILITY OF OUTFITTERS AND GUIDES. (a) No licensed outfitter or guide acting in the course of his employment shall be liable to a participant for damages or injuries to such participant unless such damage or injury was directly or proximately caused by failure of the outfitter or guide to comply with the duties placed on him by chapter 21, title 36, Idaho Code, or by the rules of the Idaho outfitters and guides board, or by the duties placed on such outfitter or guide by the provisions of this chapter.

(b) The limitations on liability created by this chapter shall apply only to outfitters or guides appropriately licensed under the provisions of chapter 21, title 36, Idaho Code, and only when the outfitter or guide is acting within the course of his employment. In the event that there is damage or injury to a participant by the action of an outfitter or guide, and there is no exemption for liability for such outfitter or guide under the provisions of this act, the rules of negligence and comparative negligence existing in the laws of the state of Idaho shall apply.

already acted in the same area." Unfortunately, the majority does not show the same restraint. The legislature has not addressed the rights and duties for personal injuries arising out of the landlord-tenant relationship. It has done so only with respect to contractual liability. The majority has stepped in and created strict tort liability on the part of landlords.

"The Idaho Constitution vests the power to enact substantive laws in the Legislature. . . . Just as Article II of the Idaho Constitution prohibits the Legislature from usurping powers properly belonging to the judicial department, so does that provision prohibit the judiciary from improperly invading the province of the Legislature." *In re SRBA Case No. 39576*, 128 Idaho 246, 255, 912 P.2d 614, 623 (1995). Because the majority has violated Article II by usurping the power of the legislature, I respectfully dissent.

Justice W. JONES concurs.

W. JONES, J. dissenting.

I respectfully dissent from the Court's decision on the basis that it ignores longstanding law in Idaho governing the landlord-tenant relationship and the existing law of premises liability. It also deviates from this Court's decisions holding that generally one is free to contract to absolve oneself from certain duties and liabilities with only two exceptions: (1) one party is at an obvious disadvantage in bargaining power; or (2) a public duty is involved (public utility companies, common carriers). *Lee v. Sun Valley Company*, 107 Idaho 976, 978, 695 P.2d 361, 363 (1985); *Rawlings v. Layne & Bowler Pump Company*, 93 Idaho 496, 499, 465 P.2d 107, 110 (1970); *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 178, 595 P.2d 709, 712 (1979). In the present case, nobody suggests that the exculpatory clause in the rental contract is ambiguous or that it was in fact part of the contract voluntarily signed by both parties. The only argument advanced is that the clause violates public policy and therefore should not be enforced. As already noted, however, this Court has firmly stated that such clauses are enforceable with the two exceptions noted above.

There is also no suggestion here that the first exception applies, i.e., that either party was at an obvious disadvantage in bargaining power. Although it might often be the case that a tenant has less bargaining power than the landlord, there is certainly no evidence offered here that that is the case in this particular situation. Depending upon market conditions, a tenant might have superior bargaining power in a rental market oversupplied with available properties. The only basis upon which plaintiff might challenge the exculpatory clause in this case that the landlord had a "public duty."

This Court specifically addressed the public duty exception in *Lee v. Sun Valley Company, supra.* In that case, Sun Valley Company, which was a licensed outfitter and guide, required guests electing to participate in equestrian trail rides to sign a "Rental Agreement—Saddle Animals for Hire" which stated in pertinent part that:

Upon my acceptance of horse and equipment, I acknowledge that I assume full responsibility for my safety. I further understand that I ride at my own risk, and I agree to hold the above entity, its officers, employees, etc., harmless from every and all claim which may arise from injury, which might occur from use of said horse and/or equipment, in favor of myself, my heirs, representatives, or dependents. I understand that the stable does not represent or warrant the quality or character of the horse furnished.

In determining the enforceability of that exculpatory clause, this Court held that I.C. § 6–1201 imposed a public duty upon Sun Valley Company, rendering the exculpatory clause unenforceable. The important distinction between that case and the present case, however, is that § 6–1201 granted a limited liability to licensed outfitters and guides in exchange for adherence to specific requirements of § 6–1201. In making its ruling in *Lee v. Sun Valley Company*, this Court stated as follows:

We do not attempt to articulate a general rule applicable to all statutes. However, we do hold where the legislature had addressed the rights and duties pertaining to personal injuries arising out of the rela-

tionship between two groups, i.e., employer-employees, outfitters and guides/participants, *and has granted limited liability to one group in exchange for adherence to specific duties, then such duties become a 'public duty'* within the exception to the general rule validating exculpatory contracts. (Emphasis added.)

In the present case, there is nothing in § 6–320 granting any favorable limited liability to landlords in exchange for adherence to the duties prescribed in the statute, which is entirely different from I.C. § 6–1201 which was involved in *Lee v. Sun Valley Company, supra.* There is no basis, therefore, on which to hold that I.C. § 6–320 imposed any "public duty" on landlords. Accordingly, the general rule firmly established in *Rawlings v. Layne & Bowler Pump Company, supra;* and *Anderson & Nafziger v. G.T. Newcomb, Inc., supra,* should not be ignored.

It should also be noted that as stated by the majority, I.C. § 6–320 is a strict liability statute. *Silver Creek Computers, Inc. v. Petra, Inc.,* 136 Idaho 879, 883, 42 P.3d 672, 676 (2002). There is nothing in the statute to indicate that the legislature intended to supplant the long-existing common law negligence standard applied to premises liability or landlord/tenant cases involving personal injury with a strict liability standard. The decision of the majority might well result in landlords becoming strictly liable for personal injuries which occur to tenants on their property. Absent a clear indication that the legislature intended such a result, this Court should not lightly disregard previous long-standing premises liability law.

Apart from the fact that I.C. § 6–320 did not impose a public duty upon landowners for the reasons already discussed, in the present case plaintiff has no right to rely upon that statute in any event. The statute specifically requires that before a tenant may file an action under that section, he must give his landlord three days' written notice of each defect in the premises or each breach of the rental agreement upon which any action will be premised, which was clearly not done in the present case. Additionally, there is nothing in I.C. § 6–320(d) to indicate that it was intended by the legislature to be applied to causes of action for personal injury in any event. Reading the entirety of the statute indicates that the legislature never intended the statute to apply to an action for personal injuries, but rather intended the statute only to provide a means to enforce a tenant's right to require repair or cure of defects in the premises that render the premises less than habitable. As noted above, this Court should not utilize this statute to produce a major change in the law of premises liability as it pertains to personal injuries to tenants.